Linda WESSEL, Individually and on behalf of all other persons similarly situated, Plaintiff,

v.

David PRYOR, Governor of the State of Arkansas, David B. Ray, Jr., Director of the Department of Social & Rehabilitative Services, and George W. Jackson, M.D., Commissioner of Mental Health Services Division, A. C. Yopp, Administrator of the Arkansas State Hospital, John L. Ruff, M.D., Russell Rogers, Nancy Massey, Coy Spann, Blance Choate, Members of the State Hospital Board, Defendants,

David Wright, Plaintiff-Intervenor.

No. LR–C–77–205.

United States District Court,
E. D. Arkansas, W. D.

Dec. 11, 1978.

William L. Massey, Griffin J. Stockley, Legal Aid Bureau of Central Arkansas, Leon Marks, American Civil Liberties Union, Little Rock, Ark., for plaintiff and plaintiff-intervenor.

Bill Clinton, Atty. Gen., Burl C. Rotenberry, Vashti O. Varnado, Asst. Attys. Gen., Little Rock, Ark., for defendants.

MEMORANDUM AND ORDER

EISELE, Chief Judge.

On June 5, 1978, this Court entered an Order (dated May 31, 1978) approving an "Agreement and Stipulation" setting forth the parties' agreement to establish constitutionally sufficient procedures for the involuntary civil commitment of the mentally ill. The Court stated at this time that the provisions of the Arkansas statutes governing this area, Ark.Stat.Ann. § 59–401, et seq., were not unconstitutional on their face, being susceptible of constitutional interpretation and application, but were being unconstitutionally applied. The Court also noted that the agreed procedures "merely set forth a framework for the protection of the minimum constitutional rights which must be afforded to an individual who is the subject of an involuntary commitment proceeding," and that the parties charged with the duty of applying these procedures were free to "formulate alternatives which go beyond the minimum constitutional standard specified in the 'Agreement and Stipulation.'"

It soon became apparent after the entry of this Order that implementation of the

new procedures was not going smoothly. The Court therefore notified the parties by letter of July 28, 1978, that some modification of the consent decree might be necessary in view of the significant confusion surrounding its implementation. The Executive Secretary of the Arkansas Judicial Department was suggested as a feasible liaison with the Arkansas chancery judges, who are the responsible judicial officers under Arkansas law in the area of involuntary commitment. Subsequently, the Court held several conferences in this case in an effort to evaluate the concerns expressed and to discuss with the parties their renewed efforts to deal with those concerns. The chancellors have been afforded representation in these discussions through counsel appearing *amicus curiae.*

As a result of the reexamination of the provisions of the "Agreement and Stipulation," the parties have agreed to new language clarifying some of the procedures to be utilized in effecting involuntary commitments, and also establishing more clearly the substantive standards by which a mentally ill person may involuntarily be committed to an institution. That new agreement is reflected in the document captioned "Modified Civil Commitment Procedures," a copy of which is attached hereto as Exhibit A.

Two points of dispute between the plaintiffs and defendants remain. The parties initially agreed that a respondent would be afforded a probable cause hearing within 72 hours of the initial appearance, which itself may occur from 24 to 48 hours after confinement. This provision continued to be an agreed matter and, indeed, is reflected in Exhibit A, the last written submission of the parties. However, at the last conference *amicus curiae* suggested an expanded period of ten days, at which point the state defendants expressed their desire to withdraw from the former stipulation and suggested a probable cause hearing within seven days of the initial appearance. As was true upon the original approval of the "Agreement and Stipulation," the Court sees no constitutional infirmity in the 72

hour period. It has further concluded, after reflection, that it should not permit the state defendants to withdraw from the earlier agreement with respect thereto. Therefore, the language of the agreement on this point, as reflected in Exhibit A, will not be changed.

The parties also agreed at one point, as a new provision, to define the "first available opportunity" at which a petition for commitment must be filed, after the respondent has been taken into custody in an emergency situation, as the first 24 hour period following detention. The state defendants now desire that the "first available opportunity" be defined as the first *48* hour period following detention. The Court can discern no reason why a person taken into custody on an emergency basis should be deprived of his liberty for as long as two days before the filing of a proper petition with the court (after which time more delay may occur, under the agreed-to procedures, before the respondent is brought before the court to be informed of the reason for his detention and advised of his rights). The State has offered no adequate explanation for its desire to withdraw from its earlier agreement. The Court has therefore rewritten into Exhibit A language which reflects the earlier agreement of the parties, and, as rewritten, it is approved.

The Court accepts Exhibit A as the agreement of the parties and concludes that involuntary civil commitments pursuant thereto will meet the requirements of the Constitution of the United States.

The implementation of the modified civil commitment procedures set forth in Exhibit A will be handled by the Attorney General in the same manner as that specified in the Memorandum and Order of May 31, 1978.

It is important to again take stock of what the Court and the parties have been doing in this proceeding. The policy of the State of Arkansas with respect to involuntary commitments of mentally ill persons and the procedures to be followed with respect thereto are, in the first instance, issues of legislative concern and matters of legislative prerogative, which should be re-

solved by the General Assembly of the State of Arkansas. The State has, in fact, already acted in this area. This Court has, however, determined that the legislation which resulted was not being applied in accordance with minimum federal constitutional standards. But the Court also concluded that it was not necessary to strike down such involuntary commitment statutes because the language of such statutes did not prevent their implementation in accordance with acceptable constitutional standards. Subsequently the parties have agreed to certain constitutionally acceptable procedures to be followed *until the legislature acts.* It is the intention of the parties and the Court that the agreed procedures will remain in effect only until the effective date of legislation (enacted by the General Assembly) covering the subject matter. The result will be that the legislature may, if it desires, study and reflect upon the difficult and important issues raised and make its own determination as to the policy of the State of Arkansas without the pressure or the urgency which would result in the absence of the existence of interim, constitutionally acceptable procedures.

It is therefore Ordered that the proposed "Modified Civil Commitment Procedures," annexed hereto as Exhibit A, be, and the same is hereby, approved by this Court, and said agreement is made a part of this Memorandum and Order. It is further Ordered that, on the basis of said agreement, the plaintiffs' motion for injunctive relief be, and it is hereby, denied.

### EXHIBIT A

### MODIFIED CIVIL COMMITMENT PROCEDURES

The following procedures are the sole methods by which an individual aged fourteen and older shall be civilly committed to the Arkansas State Hospital or any public community mental health facility in the State of Arkansas:

## I. NON–EMERGENCY SITUATIONS.

Any reputable citizen of the State may file a written petition under oath, with the clerk of the probate court of the county in which an alleged mentally ill person resides or is found, which petition for commitment shall state that the respondent is mentally ill and that at least one of the standards for involuntary civil commitment, as defined herein in Section V, is applicable to respondent. It shall describe respondent's conduct, setting out all details of which the petitioner is aware, including the time and place of any pertinent occurrence(s) and the names and addresses of any witnesses, if known.

Upon filing of a proper petition, the probate judge shall issue an order directing any sheriff or police officer to take into custody the respondent named in the petition and produce him before the court forthwith, or within twenty-four hours of the time respondent is taken into custody, excluding weekends and holidays. The court may in its discretion further order that the respondent be examined by one or more regularly licensed physicians before he is brought to court initially; the result of the examination obtained shall be filed with the court.

Once the respondent is brought before the court, the court shall:

(a) Assure that the respondent has effective assistance of counsel. If the respondent is indigent, the court shall appoint counsel;

(b) Advise the respondent that he and his attorney shall have the right to be present at all significant stages of the proceeding;

(c) Give notice to the respondent of the procedures to be followed in the commitment proceeding;

(d) Serve on the respondent and his counsel all papers relevant to the proceeding, including:

(1) petition for commitment;

(2) pick-up order;

(3) physician's statement, if previously presented to the court;

(4) any other relevant documents.

## A. *Probable Cause Hearing.*

Within seventy-two hours of the initial appearance of the respondent before the court, the respondent shall again be brought before the court to determine whether there is probable cause to believe that the respondent is mentally ill and that one of the standards for involuntary civil commitment applies to the respondent. Counsel for respondent may waive notice of the probable cause hearing in which case the probable cause hearing may be held at the time of the respondent's initial appearance in court. Respondent shall be granted a continuance for good cause shown.

The respondent shall have the following rights at the probable cause hearing:

(a) To be present, unless the court determines that his conduct in the courtroom is so disruptive that the proceedings cannot reasonably continue with him present;

(b) To the effective representation of counsel;

(c) To present evidence in his own behalf;

(d) To cross-examine witnesses who testify against him;

(e) To view any and all petitions and reports in the court file of his case;

(f) To subpoena witnesses.

Affidavits containing reports of examinations by mental health professionals may be received in evidence, provided that if the respondent demonstrates a substantial purpose in cross-examination of any examiner and such purpose is related to the justification for commitment, the court shall order such examiner's presence or allow for cross-examination by deposition.

In the event a probable cause hearing is not held upon the respondent's initial appearance, the court may order the respondent to be detained at the Arkansas State Hospital or any public community mental health facility or in custody pending such probable cause hearing.

## B. *Final Hearing (§ 59–419).*

A final hearing shall be held no later than twenty-one days following the court's probable cause determination. At the final hearing, the respondent shall have all rights available to civil litigants in the probate courts in the State of Arkansas. If the court finds that there is clear and convincing evidence to show that the respondent is mentally ill and that at least one of the standards for involuntary civil commitment applies to the respondent, an order for the commitment of the respondent may be issued.

## II. EMERGENCY SITUATIONS.

Whenever it shall appear that any person is mentally ill and as to whom at least one of the standards for involuntary civil commitment, as defined herein, is applicable, and for whom immediate confinement appears to be necessary in order to avoid harm to said person or others, any law enforcement officer on his own initiative or at the request of any interested citizen is authorized to take said person forthwith to a regularly licensed and practicing physician in the county in which the person resides or is found, or to the nearest public community mental health facility in the applicable mental health catchment area, or the Arkansas State Hospital.

If the alleged mentally ill person is detained by or admitted to the local community mental health facility or its designee, or by the Arkansas State Hospital, or if he is detained in any way in custody by local law enforcement authorities because of his alleged mental illness, a petition for commitment by the detaining or admitting facility, the officer, or by an interested citizen, must be filed at the first available opportunity in the probate court in the county where the person resides or is found. The first available opportunity is defined as the first twenty-four hour period following detention, excluding weekends and legal holidays. The respondent shall be afforded an initial appearance in court within twenty-four hours (excluding weekends and legal holidays) of the filing of the petition, or the respondent shall be released. Thereafter, the proceeding shall continue as in non-emergency proceedings.

## III. CONTINUING DETENTION OF IN-PATIENTS.

Any voluntary inpatient who is being detained by or confined in the Arkansas State Hospital, a community mental health facility or other hospital must have such voluntary status evidenced by his or her signature on a record or form provided and maintained by the detaining hospital or facility and indicating such person's informed consent to diagnosis, care and treatment. If an individual inpatient whose status changes from voluntary to involuntary, as evidenced by such person's expressed desire to leave the hospital or facility, or to refuse further care and treatment, or by a revocation of such person's previously given consent, or by any other conduct clearly indicating such person is being detained against his or her will, then the detaining hospital or facility must initiate or cause to be initiated civil commitment proceedings at the first available opportunity, as herein defined, and further detention may be only by order of the court pursuant to the commitment proceeding, or such person shall be released or discharged by the detaining hospital or facility.

## IV. LEAST RESTRICTIVE FORM OF TREATMENT.

At all steps of the civil commitment proceeding, the mental health treatments and conditions of treatment for the respondent named in the petition of commitment shall be no more harsh, hazardous or intrusive than necessary to achieve acceptable treatment objectives for the respondent and shall involve no restrictions on physical movement or supervised resident or inpatient care except as reasonably necessary for the administration of treatment or the protection of the respondent or others from physical injury. The respondent may be released at any stage of the proceeding, pursuant to Ark.Stat.Ann. §§ 59–401, 59–409, 59–423. The respondent shall be released if none of the standards for involuntary civil commitment still apply to him.

## V. STANDARDS FOR INVOLUNTARY CIVIL COMMITMENT.

A person may be subject to the provisions of this section governing involuntary civil commitment if the person suffers from a mental illness, disease, or disorder, *and* either

(1) as a result of the mental illness, disease or disorder,

(a) has lost the power or capacity to make choices or has become so confused that he cannot make a decision having any relation to the factors bearing upon his hospitalization or treatment, *and*

(b) poses a substantial risk of physical harm to himself as manifested by evidence of threats of, or attempts at, suicide or serious self-inflicted bodily harm, or by evidence of other behavior that creates a grave and imminent risk to his physical condition; or

(2) as a result of the mental illness, disease, or disorder,

(a) has a substantially diminished criminal responsibility such that the respondent appears unable to control his conduct, *and*

(b) poses a significant risk of physical harm to others as manifested by a recent overt act or recent overt behavior evidencing homicidal or other violent assaultive tendencies.

## VI. MISCELLANEOUS.

The following provisions of Ark.Stat.Ann. §§ 59–401 to 59–431 remain unaffected: Ark.Stat.Ann. §§ 59–401 to 404; 59–405(A); 59–405(C); 59–405(B); 59–408(C); 59–408(D); 59–408(E); 59–409 to 416; 59–421 to 431. Ark.Stat.Ann. § 59–405(B) is specifically retained as it applies to minors under the age of fourteen.

Ark.Stat.Ann. § 59–410 is not to be construed to give the director or employees of the Arkansas State Hospital or any public community mental health facility the right to involuntarily detain individuals without a probate court order, except in emergency situations as hereinbefore provided.

Nothing herein is intended to discourage or preclude prosecuting attorneys or other public officials from rendering assistance to individuals petitioning for commitment under this order.

Nothing herein is intended to preclude mental health professionals from administering appropriate treatment as described in Section IV (LEAST RESTRICTIVE FORM OF TREATMENT) during any period of detention under this order.