Floyd F. COLEY, Ralph Steed, Individually and on Behalf of All Other Persons Similarly Situated

v.

Bill CLINTON, Governor of the State of Arkansas; Gail S. Huecker, Commissioner of the Department of Social & Rehabilitative Services (Department of Human Services); Robert M. Rankin, Commissioner of Mental Health Services; Pat Hamilton, Administrator of the Arkansas State Hospital, for A. C. Yopp; Dr. James S. Beckman, Dr. Larry Killough, Virginia Robinson, Darrell Williams & Blanche Choate, Members of the State Hospital Board.

No. LR–C–78–198.

United States District Court, E. D. Arkansas, W. D.

Nov. 9, 1979.

Griffin J. Stockley, Jr., Legal Aid Bureau, Little Rock, Ark., for plaintiffs.

Jackson M. Jones, Asst. Atty. Gen., Little Rock, Ark., for defendants.

## MEMORANDUM OPINION

ROY, District Judge.

The plaintiffs are patients of the Arkansas State Hospital who were committed to that institution and remain there pursuant to court order. Floyd F. Coley was committed after he was found not guilty of aggravated robbery on the ground he was insane. Ralph Steed was committed after he was found incompetent to stand trial on a charge of disorderly conduct.

This petition for a declaratory judgment questions the constitutionality of Arkansas statutory procedures for commitment to and release from a mental institution of two classes of individuals:

1. Those charged with a crime but found to be incompetent to stand trial; and

2. those acquitted of a crime because they were found not guilty by reason of insanity.

The complaint also asks injunctive relief on the ground the Arkansas State Hospital has not filed reports on the plaintiffs as required by law. In addition, they allege the hospital denies them equal protection because they and others so committed are segregated from other patients not so committed and are treated in a different manner. This, they claim, amounts to an arbitrary restriction of their personal liberty.

The plaintiffs seek to represent other patients who have been committed in the same manner. Jurisdiction is alleged under 28 U.S.C. § 1343(3) and (4). Relief is requested pursuant to 42 U.S.C. § 1983.

The statutes that the plaintiffs seek to have declared unconstitutional on their face and as applied are found in Chapter 6 of Title 41 of the Arkansas Statutes Annotated, §§ 41–601 *et seq.*, and specifically §§ 41–606, 607, 612 and 614. These sections of the Arkansas Criminal Code provide the procedures for commitment and release of persons charged with a crime. The alleged constitutional infirmities are that a separate hearing on the issue of lack of mental capacity and whether a patient presents a risk of danger to himself or to the community is not written into the statute. Plaintiffs also contend that more restrictive conditions for release are applied when commitment is made under the criminal statutes. The questioned provisions are contained in the Arkansas Criminal Code, enacted in 1975, effective January 1, 1976. Few cases have interpreted the meaning of these sections. Statutory procedure for voluntary and involuntary commitments were completely revised on April 10, 1979 by Act 817 of 1979 [Ark.Stat.Ann. §§ 59–1401— 1424 (Supp.1979)].

Careful study of the sections of the Criminal Code under attack does not convince the court that they are facially unconstitutional, nor does the record reflect that these laws have been applied in such a manner that the federal court should take jurisdiction. The facts here are not analogous to those in *Wessel v. Pryor*, 461 F.Supp. 1144 (W.D.Ark.1978), which involved involuntary civil commitments to the State Hospital. Pursuant to an Agreement and Stipulation of the parties in that case, the court promulgated detailed procedures for civil commitments that included, *inter alia*, notice, right to counsel, opportunity to be heard, right to a hearing, right to present witnesses, and to cross-examine witnesses.

Since we do not find the questioned statutes inherently unconstitutional, federal court should not sit as a redrafting committee for inconsistencies or deficiencies in

state statutory schemes until the state court has had an opportunity to interpret and rule on the matters in issue. The state court would in all likelihood review the challenged statutes in light of other statutory systems, the legislative history, and previous judicial pronouncements.

To rule prematurely on the issues posed by the plaintiffs, this court would be "forced to interpret state law without the benefit of state court consideration and therefore under circumstances where a constitutional determination is predicated on a reading of the statute that is not binding on state courts and may be discredited at any time—thus essentially rendering the federal court decision advisory and the litigation underlying it meaningless." *Moore v. Sims,* —— U.S. ——, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979). The federal courts should not attempt to displace the state courts. In *Calvin Burks, et al. v. Joseph Teasdale, Governor, et al.,* 603 F.2d 59 (8th Cir. 1979), the court stated:

> . . . where a state institution like a prison or a mental hospital is concerned, a federal court does well to move with moderation so as to give the State an opportunity to solve independently the federal constitutional problems involved. *See Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Welsch v. Likins,* 550 F.2d 1122, 1128–29 and 1131–32 (8th Cir. 1977), . . .

The Court of Appeals for the Eighth Circuit has recently described guidelines for abstention in *George v. Parratt,* 602 F.2d 818 (8th Cir. 1979). The first consideration is what effect will abstention have on the rights to be protected? The plaintiffs have been committed under statutes that they claim deprive them of due process of law. However, they do not pose a serious argument that this court should take action that would result in their immediate release. They recognize that they will need to go to state procedures for this relief. Abstention, therefore, would not postpone any right they might have for release.

Another factor is whether there are available state remedies. These plaintiffs have been committed a sufficient length of time so that they clearly have a right, under the code, to present an application for release to the committing trial court; or to contest a report by the Director of the State Hospital which states that the patient should remain hospitalized. Also available is the additional remedy of a declaratory judgment action. Ark.Stat.Ann. § 34–2501, *et seq.* (Repl. 1962); *Bennett v. National Ass'n for Advancement of Colored People,* 236 Ark. 750, 370 S.W.2d 79 (1963).

The third factor is whether the challenged state law is unclear. Whether the plaintiffs had a right to a full evidentiary hearing at the time of commitment and at specified times after commitment does not appear to be clearly defined in the Arkansas law. Whether the right is implicit in the statutes must be determined by the Arkansas court. The statute does not clearly deny such a hearing or any of the other attributes of due process, and this issue has not been presented to the state courts.

A fourth factor to consider is whether the challenged state law is fairly susceptible of an interpretation that would avoid any federal constitutional question. The United States Supreme Court has not spoken to all of the requirements of due process that must be met in a civil or a criminal commitment. It is clear that there are some standards that must be substantially similar as between civil and criminal commitments. The standards for commitment of one charged with a crime or found innocent by reason of insanity must be substantially similar to those for involuntary civil commitment. *Jackson v. Indiana,* 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1971). Also, one may not be committed for an indefinite period solely on account of lack of capacity to stand trial. *Id.* The procedures for commitment of one who has been convicted of a crime must be substantially the same as for those who have not. *Baxstrom v. Herold,* 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966). However, it has been recognized that differing treatment of these two classes of individuals is justified in some respects. *Bolton v. Harris,* 130 U.S.App. D.C. 1, 395 F.2d 642 (D.D.C.1968).

Careful consideration of the various pertinent sections of the Criminal Code compels this court to find that the state court may resolve the issues in a way that will avoid or moot the federal constitutional claims of the plaintiffs. This court cannot predict the exact way in which the state court will interpret the statutes, but we assume it will be in a lawful and constitutional manner.

The last factor to consider is whether abstention will avoid unnecessary federal interference in state operations. There is no active state suit that will be disrupted. However, the discretionary power to abstain is not dependent upon there being a state court suit in progress. The court should also consider whether federal intervention would interfere with state procedures and policies in areas of special state concern. Release and commitment of those alleged to have mental illness and to be dangerous is of compelling interest to the state. Abstention would allow the state to consider the claims of the plaintiffs and others without having to consider the effect of prior federal judicial pronouncements. This is precisely the situation Judge Eisele sought to avoid in *Wessel v. Pryor, supra*, when he said: "It is the intention of the parties and the Court that the agreed procedures will remain in effect only until the effective date of legislation (enacted by the General Assembly) covering the subject matter."

The plaintiffs have not sought release in state court and have not been denied a hearing there. In addition, there is nothing in the record to indicate that they were denied a hearing that complied with constitutional standards when they were committed or that the commitment has been challenged in the Arkansas court.

The plaintiffs' petition for declaratory relief as to the constitutionality of the Act is dismissed without prejudice. After the issues are presented to the Arkansas State Courts the plaintiffs may return to federal court for redress if any federally protected rights have been denied.

The court is making this decision *sua sponte* because the validity of the statute is important to the state court system of justice and federal court should abstain until the state court has passed on the issues involved. See *Tate, Sua Sponte Consideration on Appeal*, in Appellate Judicial Opinions 128 (Leflar ed. 1974), and *Vestal, Sua Sponte Consideration in Appellate Review, Id.*

The remaining issues to be decided are plaintiffs' requests for injunctive relief. The first to be discussed goes to the conditions of their confinement. The second refers to the duty of the Director of the State Hospital to file reports with the committing court.

The plaintiffs pray that the State Hospital be ordered to: (1) Formulate standards and procedures by which each patient committed to the State Hospital, whether by civil or criminal commitment, is evaluated to determine what restraints least restrictive of each patient's personal liberty shall be placed on him or her consistent with the needs of the State Hospital to provide for the physical safety of the other patients, hospital staff, and the community; (2) refrain from arbitrarily depriving them of personal liberty and from treating civil and criminal committees differently solely on the basis of whether their commitment was made pursuant to a civil or criminal commitment; (3) refrain from treating plaintiffs as though they were prisoners who may gain more personal liberties within prison if they demonstrate they will conform to the system; (4) made assignment of plaintiffs to that confinement area of the State Hospital least restrictive of their liberty; and (5) stop treating male patients differently from female patients.

Patients committed pursuant to the Criminal Code are all housed in Rogers Hall. There are four wards: (1) The Cell Block which houses individuals who have been sent to the State Hospital for psychiatric examination in connection with a criminal charge. These patients are normally at the State Hospital for a maximum of thirty days and are not there for treat-

ment. (2) Ward B houses individuals who have been transferred from the Cell Block after they have been formally committed pursuant to the Criminal Code. These patients are kept in Ward B a minimum of sixty days. (3) Ward A is the next step in the progression and the patient may be moved here after the minimum time has been spent in Ward B. More privileges are allowed the patient in this ward. (4) Ward H houses all the women in Rogers Hall.

■ The patients in Rogers Hall are segregated from other patients and do not have as much freedom or as many privileges as those committed through the civil process. Ground privileges are more restricted and visitors are limited to attorneys and members of the immediate family. Otherwise, there is some, but little, difference between the treatment given these patients. There is, however, a significant difference between the classes of patients committed. One class is committed because not competent to stand trial and may face trial and possible imprisonment at some time in the future. Another class is composed of those found not guilty by reason of insanity. So in both these classes there is a need for security to prevent escapes and perhaps other crimes, which differs from civil commitments.

Therefore, the court finds the restraints on the plaintiffs' personal liberty are not more restrictive than is consistent with the duty of the State Hospital to provide for the physical safety of other patients, hospital staff, and the community.

■ The mere fact of segregation does not deny equal protection. The women in Rogers Hall are treated differently from the men in that they are housed in one ward and are not moved about pursuant to the same regulations as the men—that is, they are not initially placed in one ward and then moved to another when the staff considers them ready. Of the seventy patients in Rogers Hall at the time of trial, only five were women and four of these were committed for treatment; whereas there were approximately 32 men in Ward A. The difference in numbers is sufficient

reason to house all of the women together. In fact, because they are so few in number it would result in unwarranted isolation if they were segregated in the same manner as the men.

■ The policy of initially placing the men in Ward B with restricted privileges and then moving them to Ward A with more privileges is sufficiently connected with therapeutic treatment to be a reasonable and valid procedure. The testimony of the State Hospital psychiatrists at the hearing is credible and supports this finding.

■ The second request for injunctive relief is that the court enjoin the defendants from confining individuals committed pursuant to the criminal code for more than a year without following the provisions of Ark.Stat.Ann. § 41–607 (Repl.1977) which requires the Director of the State Hospital to file with the committing court a written report indicating whether the defendant is fit to proceed to trial.

Section 41–607 provides that "[w]ithin a reasonable period of time, but in any case within one [1] year of a commitment" of an individual found unfit to stand trial, "the Director of the Arkansas State Hospital shall file with the committing court a written report indicating whether the defendant is fit to proceed." At that time, if the court, pursuant to the report of the Director or as a result of a hearing on the report, determines that the defendant is fit to proceed, prosecution may commence. The section then outlines findings the court may make which could lead to release of the patient from the State Hospital. This provision apparently applies only to those patients who were charged with a crime after the effective date of the Code, January 1, 1976. *Campbell v. State*, 265 Ark. 77, 576 S.W.2d 938 (1979). It is apparent that the Director has a duty to file these reports, at the end of one year, or sooner, only for those found incompetent to stand trial.

Section 41–613 provides, *inter alia*, that the Director shall make application for the discharge or conditional release of a patient committed after being found not guilty by

reason of insanity who is no longer affected by mental disease or defect or, if so affected, that he no longer presents a danger to himself or the person or property of others and is not in need of care, supervision, or treatment. This section of the Code contemplates a report by the Director only when he determines that the patient should be released.

In addition to the provisions previously discussed, the statute also provides: "A person committed pursuant to section 612 [§ 41–612] may apply to the court by which he was committed for an order of discharge or conditional release upon the ground that he is no longer affected by mental disease or defect, or if so affected, that he no longer presents a danger to himself or to the person or property of others."

Testimony of officials of the State Hospital was that 60% of the patients committed pursuant to the criminal code have been there for more than a year. Most are unfit for trial. Twelve and one-half percent to fifteen percent were adjudged not guilty by reason of mental disease or defect. Of those patients classified as unfit for trial and committed more than one year, no recommendation was made by the hospital staff to any committing court for release or discharge of a patient or that the patient was competent to stand trial. The testimony further reflected that reports are submitted as specified in the court order committing the patient, but if the order of commitment does not so direct, the officials of the Hospital exercise their own discretion concerning submission of the reports.

It is apparent that the Director of the Arkansas State Hospital has a duty under the statute to file the report for plaintiff Ralph Steed who was committed after being found incompetent to stand trial. This is because he was committed pursuant to the Criminal Code more than a year ago. The Director of the State Hospital is ordered to file this report if he has not already done so.

■ Although the statute does not specifically require such a report for Floyd F. Coley, who has a right under the provisions of § 41–613 to periodically apply for discharge, the court finds that a reasonable interpretation of the overall provisions of the Act requires that such a report be filed at least once a year.

■ Class relief was requested for all of the individuals held in the Arkansas State Hospital pursuant to the criminal commitment statutes. This relief must be denied. The length of time they have been committed, the statutory authority that allowed their commitment, and the reasons therefor would permit so many variations of remedy for each case that any sort of class relief would be impossible. Each case must be examined individually in order to determine whether a report and/or a release is warranted. Therefore, the requirements of Fed.R.Civ.P. 23 have not been met.

Accordingly, the complaint of the plaintiffs will be dismissed except for the limited relief indicated. An order to this effect will be entered on this date.