Terry Jo CHATMAN *v.* STATE of Arkansas

97-1269                                    985 S.W.2d 718

Supreme Court of Arkansas
Opinion delivered February 11, 1999

[Supplemental opinion on denial of rehearing delivered
April 8, 1999.]

*William R. Simpson, Jr.*, Public Defender, by: *Russell Byrne*, Deputy Public Defender, for appellant.

*Winston Bryant*, Att'y Gen., by: *Vada Berger*, Asst. Att'y Gen., for appellee.

R OBERT L. BROWN, Justice. Appellant Terry Jo Chatman appeals from a forty-five-day commitment order entered by a Pulaski County probate judge sitting as a Stone County probate judge. He contends that the commitment order was invalid because a probable-cause hearing had not first been held by the Stone County probate judge, as required by law. We

agree that the forty-five-day commitment order was invalid and that the probate judge in Pulaski County lacked jurisdiction to enter the order for two reasons: (1) failure to conduct a probable-cause hearing to determine whether Chatman should be admitted for evaluation; and (2) the fact that the probate judge conducting the forty-five-day hearing was not the Stone County probate judge. We reverse and dismiss.

On Friday, August 1, 1997, the probate judge for Stone County received a telephone call from a deputy sheriff of the Stone County Sheriff's Department advising him that Chatman had a gun and was making threats of suicide. Chatman was picked up by the Sheriff's Department that same day and placed in jail for the night. On Saturday, August 2, 1997, Chatman was evaluated by a licensed clinical social worker who confirmed his suicidal threats. The Stone County deputy sheriff completed a petition to have Chatman involuntarily admitted to the Arkansas State Hospital based on these threats. This petition was filed on Monday, August 4, 1997. Also, on Saturday, August 2, 1997, the Stone County probate judge found probable cause to believe Chatman posed a clear and present danger to himself or others and ordered that he be detained and transported to the Arkansas State Hospital for a seven-day mental health evaluation. Chatman apparently was transported to the Arkansas State Hospital that same day. The order of detention and evaluation was not filed until August 13, 1997. According to the record and Chatman's testimony, no probable-cause hearing was conducted by the Stone County probate judge prior to his order to transport Chatman to the Arkansas State Hospital for evaluation.

On Friday, August 8, 1997, a Pulaski County probate judge sitting as a Stone County probate judge assumed jurisdiction of the matter pursuant to Ark. Code Ann. § 20-47-205(g) (Supp. 1997), and conducted a hearing. Following the hearing, she entered an order involuntarily admitting Chatman to the Arkansas State Hospital for a period not to exceed forty-five days. This order was filed on August 27, 1997. It is from that order that Chatman appeals.

Chatman contends on appeal that the probate judge erred in entering a forty-five-day mental-treatment order when no probable-cause hearing had first been held. His request for relief is that this court should stop such omissions in procedure from occurring.

■ We begin by addressing two preliminary matters. First, there is the mootness point. The forty-five days for treatment which was ordered by the probate judge has clearly expired. Chatman, nevertheless, requests that this court reach the merits of the issue because cases like this, he posits, will always become moot before litigation can run its course. We agree with Chatman's point. In *Campbell v. State*, 311 Ark. 641, 846 S.W.2d 639 (1993), we noted that we will not ordinarily decide issues which are moot, but that when a case involves the public interest or tends to become moot before litigation can run its course, we will decide the case. The instant case clearly fits within the parameters set out by this court in *Campbell*. Persons committed under a forty-five-day civil commitment order would never be able to appeal those orders because they will likely have been released from the order before their appeals can reach this court. For that reason, we will address the merits of this case.

The State raises a second procedural point, and that is whether Chatman preserved his argument for appeal. At the beginning of the hearing before the probate judge on Friday, August 8, 1997, Chatman's counsel and the judge engaged in the following colloquy:

> DEFENSE COUNSEL: Your Honor, before we get started, I object to proceeding at this point because I just learned that there was no Section Five hearing.

> PROBATE JUDGE: Okay. The Court notes the objection, and you can represent testimony to that effect. Ms. Ball.

> COUNSEL FOR PETITIONER: The Petitioner calls Doctor Lisa Beisel to the stand.

The judge then proceeded with the hearing and heard the testimony of Dr. Lisa Beisel, staff psychiatrist for the Arkansas State Hospital. Following Dr. Beisel, Chatman took the stand and testi-

fied that he had been transported to the Arkansas State Hospital without a hearing before the Stone County probate judge. He was in the midst of his testimony and testifying that he was at his girlfriend's house at the time of his pickup by the Sheriff's Department, when his counsel renewed his objection. The judge responded:

> The Court notes that. It is not an appellate court, so I'm not sure that this Court has jurisdiction to be able to say that — it's certainly notable that it looks like all this happened on a Saturday. The Petitioner apparently is also a Stone County Sheriff's Deputy. Did you — were you at your girlfriend's home, Mr. Chatman? Is that the —
>
> A. Yes, ma'am.

The hearing then continued.

■ We believe that Chatman's issue on appeal is preserved for our review. It is clear that Chatman's counsel first objected to "proceeding at this point" because he had just learned that there had been no probable-cause hearing, which is also known as a Section Five hearing. The probate judge noted the objection but proceeded on with the hearing. When Chatman's counsel objected a second time, the probate judge noted that she was not an appellate court and, again, continued with the hearing. It is clear to us that Chatman's counsel objected to the hearing's taking place and that the probate judge made a conscious decision to go forward with the hearing despite the fact that a probable-cause hearing had never been conducted. Because of this decision, we turn to the merits.

The statutory scheme for evaluating and treating a person who is dangerous to himself or others is laid out in the Code under the title "Commitment and Treatment of the Mentally Ill." *See* Ark. Code Ann. §§ 20-47-201 through 20-47-222 (Repl. 1991, Supp. 1997). The first step in the procedure for involuntary admissions is for an individual who has reason to believe another person constitutes a danger to himself or others to file a petition in the probate court in the county where that person resides. Ark. Code Ann. §§ 20-47-207, 20-47-210 (Repl. 1991). After the petition is filed, a hearing must be held within three days of that

event before the probate judge of that county to determine whether there is probable cause to believe the person has a mental illness and is a danger to himself or to others. Ark. Code Ann. § 20-47-209 (Repl. 1991).[1] This is the Section Five hearing, and in order for a person to be admitted to a hospital for evaluation, the probate judge must be convinced that such is warranted by clear and convincing evidence. *Id.* If the probate judge orders the person admitted for evaluation, a second hearing must be held within seven days by a probate judge where the person is being evaluated to decide if detention in a hospital or receiving facility or other program for up to forty-five days for treatment is needed. Ark. Code Ann. §§ 20-47-205(b), 20-47-214 (Repl. 1991, Supp. 1997). Any probate judge in the Sixth Judicial District, where the Arkansas State Hospital is located, may hold that hearing if the person is detained within that district. Ark. Code Ann. § 20-47-205(g) (Supp. 1997). If the probate judge determines by clear and convincing evidence that the person is a danger to himself or others, the judge shall order detention for treatment for a maximum of forty-five days. Ark. Code Ann. § 20-47-214 (Repl. 1991).

There is also a procedure for immediate confinements and evaluation for emergency situations. *See* Ark. Code Ann. § 20-47-210 (Repl. 1991). Under § 20-47-210, whenever a person is a danger to himself or to others and immediate confinement appears necessary, a law enforcement agency in the jurisdiction shall transport that person to a hospital or receiving facility, if there is no other safe means of transportation available. A petition for involuntary admission with a request for immediate confinement must be filed within seventy-two hours, excluding weekends and holidays. The probate judge for the county then holds an ex parte hearing with the petitioner to determine whether there is reasonable cause for involuntary admission and imminent danger of death or serious bodily harm. If the probate judge finds that immediate confinement under those criteria is necessary, the judge shall order the law enforcement agency to transport the person to

---

[1] The statute (§ 20-47-209(a)(1)) requires that the probable-cause hearing be "set" within three days, and we construe that to mean set and held within that time period.

a receiving facility. A probable-cause hearing under § 20-47-209(a)(1) (the Section Five hearing) must then be held within seventy-two hours of the person's detention and confinement.

In the case at bar, the probate judge for the Sixth Judicial District conducted the forty-five-day hearing, acting as a Stone County probate judge, on August 8, 1997. It is clear, though, that no probable-cause hearing had been held. Based on Chatman's testimony, he was picked up by the Stone County sheriff's office on Friday, August 1; jailed for one night in Stone County; and transported to the Arkansas State Hospital in Little Rock on Saturday, August 2, where he was detained without a hearing until the following Friday, August 8.[2] This violates the procedure for involuntary admissions as well as the procedure for immediate confinements as clearly expressed by the statutory scheme in that no probable-cause hearing was held within three days of the petition's being filed or his detention in the Arkansas State Hospital. *See* Ark. Code Ann. §§ 20-47-207, 20-47-209, 20-47-210 (Repl. 1991, Supp. 1997).[3] The State argues that the probate judge's decision following the forty-five-day hearing cured any defects in procedure and that in any event there was substantial compliance with the procedural mandates. We do not agree. It is imperative under the statutes that a probable-cause hearing, justifying further detention and evaluation, be conducted within three days of the petition for involuntary admission or, in the case of immediate confinement, within three days of detention. The hearing to determine probable cause is mandatory, and no hearing was held.

The question then confronting this court is what remedy is appropriate. We turn once more to *Campbell v. State, supra,* for guidance. The issue in *Campbell* was the failure to file a petition for immediate confinement under Ark. Code Ann. § 20-47-210

---

[2] We note that incarceration in jail is not the type of confinement or detention envisioned under the immediate-confinement statute, Ark. Code Ann. § 20-47-210 (Repl. 1991). Rather, the Sheriff's Department should have transported Chatman to a hospital or receiving facility or program.

[3] The petition and initial order indicate that this was an involuntary-admission case under §§ 20-47-207 and 20-47-209, but the facts show that Chatman was immediately confined, which brings into play § 20-47-210.

(Repl. 1991), within seventy-two hours of detention. We held that filing a timely petition was mandatory under the statute, and that failure to comply with this statutory mandate rendered the probate court devoid of jurisdiction to conduct the forty-five-day hearing.

■ The same holds true in the instant case. Failure to conduct a probable-cause hearing was a fatal defect in the process and divested any successive court of jurisdiction to proceed further in the matter. Counsel for Chatman correctly assailed the jurisdiction of the probate court at the forty-five-day hearing, and the resulting order by the trial court for treatment up to forty-five days was void. As we did in *Campbell*, we hold that the order of the probate judge directing treatment for Chatman for up to forty-five days be reversed and the case dismissed.

■ But there is a second jurisdictional defect evident in this case which is not raised by Chatman but which we are required to raise on our own motion. *See Hoyle v. Faucher*, 334 Ark. 529, 975 S.W.2d 843 (1998); *Priest v. Polk*, 322 Ark. 673, 912 S.W.2d 902 (1995). The jurisdiction of the state's probate courts is spelled out in Section 34, Article 7 of the Arkansas Constitution:

> In each county the Judge of the court having jurisdiction in matters of equity shall be judge of the court of probate, and have such exclusive original jurisdiction in matters relative to . . . persons of unsound mind and their estates, as is now vested in courts of probate, or may be hereafter prescribed by law.

The General Assembly, by Act 28 of 1989, (3d Ex. Sess.), enacted comprehensive mental-treatment legislation which included a provision for either a probate judge in the Sixth Judicial District, which includes Pulaski County, to conduct the forty-five-day hearings for a person detained in the Arkansas State Hospital or for the probate judge outside the Sixth Judicial District who had original jurisdiction to do so:

> (g) Each probate judge within the Sixth District may conduct involuntary commitment hearings prescribed by §§ 20-47-214 and 20-47-215 provided that the person sought to be committed is detained within the boundaries of the Sixth District at

the time of the hearing. Provided, however, if the person was transported to a location within the Sixth District by order of a court outside the Sixth District, the court of original jurisdiction may conduct the hearings prescribed by §§ 20-47-214 and 20-47-215.

*See* Ark. Code. Ann. § 20-47-205(g).[4]

Neither option provided by Act 28 was followed in this case. The Stone County probate judge did not conduct the forty-five-day hearing in Pulaski County. Nor did the Pulaski County probate judge conduct the hearing in her capacity as a Pulaski County probate judge. Rather, the Pulaski County probate judge assumed the mantle of a Stone county probate judge, which Act 28 does not authorize and which, according to the record before us, she had no power to do.

■ ■ Furthermore, assuming the Pulaski County probate judge was acting as a Pulaski County probate judge, she had no authority to do so. It is axiomatic that a court has no authority to act prior to the filing of a motion, petition, or other pleading in that court. *State v. Pulaski County Circuit Court*, 327 Ark. 287, 938 S.W.2d 815 (1997) (per curiam). Without a petition's being filed in Pulaski County probate court in the Chatman matter, no Pulaski County probate judge had jurisdiction to act. Accordingly, the order to commit Chatman for treatment was void.

Reversed and dismissed.

THORNTON and SMITH, JJ., concur in part; dissent in part.

RAY THORNTON, Justice, concurring in part, dissenting in part. I respectfully dissent from the majority opinion in this case in so far as it reverses and dismisses the order of the Stone County Probate Court directing treatment for appellant, because in my view the Stone County Court substantially complied with the requirements of Ark. Code Ann. § 20-47-210 concerning immediate detention of a person requiring treatment. This statute provides that whenever it appears that a person is a

---

[4] Though Act 28 as codified uses the term "Sixth District," Act 28 as enacted uses the term "Sixth Judicial District."

danger to himself or others and immediate confinement appears necessary to avoid harm to such person or others, an interested person or the local law enforcement agency may take the person to a hospital or to a receiving facility or program. A petition praying for involuntary admission of the person shall thereafter be filed in the probate court of the county in which the person resides or *is detained* within seventy-two hours, excluding weekends and holidays, and a hearing as provided in § 20-47-209(a)(1) shall be held within three days, excluding weekends and holidays, of the filing of the petition. Ark. Code Ann. § 20-47-210(a) (Repl. 1991).

The affidavit of Stone County Chancellor Stephen Choate reflects that the judge received a call around 9:00 p.m. on Friday, August 1, 1997, from a Stone County Sheriff's Department deputy who had responded to a 911 call that appellant Terry Chapman had a gun and was threatening suicide. The officer reported to the judge concerns that appellant might require hospitalization in a mental-health facility. Judge Choate testified via affidavit that he was acquainted with appellant and familiar with his history of problems, and therefore took appellant's threats of self-harm quite seriously. The judge instructed the officer to contact the local mental-health clinic, which set up a screening for appellant the following day. On August 2, the judge was informed that appellant was "in pretty bad shape" and had been approved for admission to the State Hospital. Based upon this information, Judge Choate issued an order for appellant to be transported to the State Hospital, and he was taken there that day. This action is consistent with the provisions of Ark. Code Ann. § 20-47-210.

The deputy filed a petition for involuntary admission on Monday, August 4, 1997, in the Stone County Probate Court, and on Friday, August 8, 1997, a Pulaski County probate judge sitting on exchange as a Stone County probate judge conducted a hearing. As pointed out by the majority, this procedure, long-practiced though it may be, lacks specific statutory authorization, and the Monday petition should have been filed in the Pulaski County Probate Court because appellant was then detained in the State Hospital in Pulaski County. Following the hearing, which could have properly been held in Pulaski County within seventy-two hours of the filing of a petition in the Pulaski County Probate Court, the probate judge entered an order involuntarily admitting

appellant to the Arkansas State Hospital for a period not to exceed forty-five days.

I would hold that not only did the State substantially comply with the requirements of Ark. Code Ann. § 20-47-210(a) with respect to the initial emergency detention, but also that in many respects Judge Choate provided appellant with greater protection than that ordinarily afforded a respondent under that subsection. The law enforcement officer or any other interested person could have transported appellant to Little Rock, then filed a petition in Pulaski County on or before Tuesday. If the petition had been filed in the Pulaski County Probate Court on Tuesday, it would have been timely, and the Friday hearing before the Pulaski County Probate Court would have been timely as well.

In the case before us, the petition filed in the Stone County Probate Court was filed within seventy-two hours of appellant's detention; appellant's first hearing in the Pulaski County Probate Court sitting as the Stone County Probate Court was held four days following, or within one day of the seventy-two hour requirement following the filing of this petition. Under these circumstances, except for the mistake in filing the petition in the Stone County Probate Court, there was substantial compliance with the requirements of the statutory scheme.

Appellant suffered no harm as a consequence of the mistaken choice of filing in the Stone County Probate Court. Indeed, rather than simply having been transported forthwith to the State Hospital or an equivalent receiving facility, appellant's situation was assessed by Judge Choate, who requested a screening of appellant's condition to verify his condition before he was transported to the State Hospital. It is not challenged that appellant's condition was serious and his life in danger, and Judge Choate walked a fine line in balancing a respondent's liberties against the State's obligation to act in *parens patriæ*.

We should note that the statutes concerning involuntary admission state as their purpose, among other laudable goals, "Preventing persons with mental illness from harming themselves or others." Ark. Code Ann. § 20-47-201(a)(3) (Repl. 1991). The interest of the State in protecting the mentally ill from harm supports a determination that the Stone County judge and the deputy sheriff were acting substantially in compliance with the terms of their authority in ordering his detention and confinement

at the State Hospital. *See e.g., Ball v. State*, 278 Ark. 423, 425-27, 646 S.W. 2d 693, 695-96 (1983). Therefore, I respectfully dissent on the issue of compliance with the statutes concerning the initial emergency detention. However, the majority raises *sua sponte* the question whether under the present statutory framework, the petition filed on Monday with the Stone County Probate Court could then be heard by the Pulaski County Probate Court on exchange. Without specific statutory language allowing the Pulaski County Probate Court to act on exchange for the court which commences the commitment process, such action is not authorized. This could be remedied either by the addition of appropriate language to cure the lack of statutory authority by the General Assembly, or by filing the original petition in Pulaski County Probate Court within seventy-two hours of commitment on an emergency basis.

I respectfully dissent from any conclusion that the Stone County Probate Court acted erroneously, but because there is no statutory authority for the Pulaski County Probate Court to sit on exchange to conduct the hearing required following an involuntary commitment, I concur in the result reached by the majority in ruling that the Pulaski County Probate Court did not have jurisdiction to enter the forty-five-day order as though it were sitting as a Stone County Probate Court.

I am authorized to state that Justice SMITH joins in these views.

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
April 8, 1999

991 S.W.2d 534

*William R. Simpson, Jr.*, Public Defender, by; *Russell Byrne*, Deputy Public Defender, for appellant.

*Mark Pryor*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

Robert L. Brown, Justice. The State of Arkansas petitions for rehearing on the basis that this court has misread Ark. Code Ann. § 20-47-205(e) (Supp. 1997) and interpreted it in such a way as to render absurd results.[1] Two *amicus curiae* briefs have been filed in support of the State's position: one by the Office of the Prosecutor Coordinator and a second by the Arkansas Department of Human Services. We deny the petition for rehearing but issue this supplemental opinion in further clarification of our opinion.

The pertinent section reads:

> (e) Each probate judge within the Sixth District may conduct involuntary commitment hearings prescribed by §§ 20-47-214 and 20-47-215 provided that the person sought to be committed is detained within the boundaries of the Sixth District at the time of the hearing. Provided, however, if the person was transported to a location within the Sixth District by order of a court outside the Sixth District, the court of original jurisdiction may conduct the hearings prescribed by §§ 20-47-214 and 20-47-215.

---

[1] Act 1224 of 1997 caused this section to be rewritten so that the pertinent section at issue is § 20-47-205(e) and not § 20-47-205(g), as cited in the original opinion.

*See* Ark. Code. Ann. § 20-47-205(e) (Supp. 1997). This section clearly provides that probate judges in Pulaski County may conduct forty-five-day hearings under § 20-47-214, if the person to be committed for evaluation is being detained in Pulaski County. It further states, unambiguously, that if a court outside the Sixth Judicial District transferred the person to Pulaski County, that court may conduct the forty-five-day hearing. The statute does not require that the probate judge outside the Sixth Judicial District actually conduct this hearing in Pulaski County, as our original opinion erroneously stated. The problem with § 20-47-205(e) is that it does not provide the *capacity* in which the Pulaski County probate judge presides over these hearings.

Despite this deficiency, it is clear to us, in answer to DHS, the Prosecutor Coordinator, and the State, that § 20-47-205(e) does not convert a Pulaski County probate judge into a probate judge from the county of original jurisdiction, in this case Stone County. Without a clear direction from the General Assembly, we will not assume that a Pulaski County probate judge automatically becomes a Stone County Probate Judge simply because a person has been transferred to a detention facility within Pulaski County.

Second, if a Pulaski County probate judge is to conduct the forty-five-day hearing in his or her own capacity, a petition must be filed before the Pulaski County Probate Court. Though we recognize the time constraints involved in many of these commitment proceedings, a filing by an interested party prefatory to a Pulaski County probate judge's conducting a forty-five day hearing is necessary to commence the matter before that judge. In short, we read § 20-47-205(e) as authorizing Pulaski County probate judges to conduct the forty-five-day hearings as Pulaski County probate judges, but a petition must be filed before that court to give it jurisdiction.

Petition denied.