Cite as 2025 Ark. App. 165

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CV-23-716

|  |  |  |
|---|---|---|
| CHUONG LE | | Opinion Delivered  March 12, 2025 |
| | APPELLANT | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72PR-23-596] |
| V. | | |
| | | HONORABLE BETH STOREY BRYAN, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

**WENDY SCHOLTENS WOOD, Judge**

Chuong Le appeals a forty-five-day commitment order entered by the Washington County Circuit Court. He contends that the court's order is invalid because he was given long-acting medication before the relevant statutes allowed it to be administered; the order does not incorporate a treatment plan by reference, as required; and the exhibits admitted do not comport with the statutory definition of a treatment plan. Le also claims that the circuit court lacked jurisdiction to enter the order. We affirm.

On April 18, 2023, Le was admitted to the mental-health unit at Northwest Medical Center in Springdale (NWMC). Dr. Shankar Yalamanchili treated Le during that stay and diagnosed him with schizoaffective disorder, bipolar type, with symptoms of schizophrenia and mania. Upon discharge on June 12, Le was administered Invega Sustenna, a long-lasting drug used to treat, among other things, schizoaffective disorder.

On July 3, Le's family brought him back to NWMC because he was attacking himself and his parents, was breaking things, and believed that people from church were trying to "kill and eat him." On July 5, Joanne Charles, the social worker who worked with Le during his prior admission at NWMC, filed a petition in the Washington County Circuit Court to involuntarily commit Le for evaluation and treatment pursuant to Arkansas Code Annotated sections 20-47-207 and -210 (Repl. 2018). When a person is a danger to himself or others and immediate confinement appears necessary, the person may be temporarily detained and confined, but a hearing must be held within seventy-two hours of detention. Ark. Code Ann. §§ 20-47-207, -210. Charles alleged in the petition that Le was not oriented to time, place, or situation; responded to internal stimuli; stood in the shower with his clothes on; played in the toilet water; refused his medications, including insulin; was experiencing auditory and visual hallucinations and paranoia; and was spontaneously yelling, destroying property, and hitting himself. On July 5, the circuit court entered an order for immediate detention and evaluation and set a hearing pursuant to Arkansas Code Annotated section 20-47-209 (Repl. 2018)—known as a probable-cause or Section Five hearing—for the next day.

At the Section Five hearing, Dr. Yalamanchili testified that he was familiar with Le from his past admissions; that he had attempted to conduct a clinical interview with Le on the day of the hearing, but Le had refused to participate; and that he had previously diagnosed Le with schizoaffective disorder, bipolar type. He opined that Le was not able to manage himself in his current state and lacked the capacity to care for himself if discharged. He said that Le had been prescribed Invega Sustenna during his previous hospital stay, had

2

been administered a dose before discharge on June 12, and had filled the prescription for Invega on June 16. He said the first dose is typically given at the hospital, a second dose is usually administered "on the outside" a week later, and then a maintenance dose is injected every thirty days thereafter.

The circuit court entered a probable-cause order on July 6 involuntarily committing Le to the Arkansas State Hospital System for a period of seven days for evaluation to determine whether treatment for mental illness was appropriate and setting a hearing on July 14 pursuant to Arkansas Code Annotated section 20-47-214 (Repl. 2018)—known as a Section Nine hearing. A Section Nine hearing must be held within seven days of detention (excluding weekends or holidays) to determine whether detention for up to forty-five days for treatment is necessary. Ark. Code Ann. §§ 20-47-205(b)(1), -214 (Repl. 2018).

At the Section Nine hearing on July 14, Dr. Yalamanchili testified that he had diagnosed Le, in his current state, with schizoaffective disorder. He said Le had been given the first dose of Invega that day to treat the disorder. The State introduced two exhibits through Dr. Yalamanchili: exhibit 1, titled "Master Treatment Plan"; and exhibit 2, titled "Progress Notes." The Master Treatment Plan contains a diagnosis of "acute psychosis," and the Progress Notes provide an "assessment" of "schizoaffective disorder, bipolar type." Dr. Yalamanchili testified that acute psychosis described Le's symptoms at Le's initial presentation and that his ultimate diagnosis after continued evaluation was schizoaffective disorder. On July 17, the circuit court entered an order for Le's involuntary admission for a

3

period not to exceed forty-five days ("Section Nine Order"). Le appeals the Section Nine Order.[1]

Le contends that the circuit court's Section Nine Order is invalid "due to procedural violations of statutory mandates," specifically alleging three violations. The statutory scheme for evaluating and treating a person who is dangerous to himself or others is set forth in Arkansas Code Annotated sections 20-47-201 to -230 (Repl. 2018 & Supp. 2023), titled "Commitment and Treatment." The first violation alleged by Le is that he was given Invega, a long-acting medication, before the Section Nine hearing in violation of section 20-47-218(b)(2)(A). This provision sets forth the following limitations on treatment during detention: "During the initial period of evaluation and treatment, psychotherapy and oral or intermuscular medication may be used if the effects of the medication on the behavior of the individual do not exceed seventy-two (72) hours." Ark. Code Ann. § 20-47-218(b)(2)(A).

The parties do not dispute that "initial period of evaluation and treatment" is not specifically defined in the statutory scheme, and the testimony is clear that Invega is a long-acting medication that was provided to Le before the Section Nine hearing. Le argued that "initial period of evaluation and treatment" included the entire period before the Section Nine hearing. The circuit court disagreed, determining that the "initial period of evaluation and treatment" referred to the seventy-two hours between detainment and the probable-

---

[1]The forty-five days for treatment that was ordered by the circuit court has clearly expired.  Nevertheless, we reach the merits of Le's appeal because cases like this will always become moot before litigation can run its course. *See Chatman v. State*, 336 Ark. 323, 985 S.W.2d 718 (1999); *Campbell v. State*, 311 Ark. 641, 846 S.W.2d 639 (1993).

cause hearing. In other words, the court found that long-acting medication could be provided after the Section Five hearing but before the Section Nine hearing.

We review issues of statutory interpretation de novo and are not bound by the circuit court's interpretation of a statute. *Bell v. McDonald*, 2014 Ark. 75, at 4, 432 S.W.3d 18, 21. However, in the absence of a showing that the circuit court erred, its interpretation will be accepted as correct on appeal. *Id.*, 432 S.W.3d at 21. The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Miller v. Thurston*, 2020 Ark. 267, at 7, 605 S.W.3d 255, 258–59. The basic rule of statutory construction is to give effect to the intent of the legislature. *Steve's Auto Ctr. of Conway, Inc. v. Ark. State Police*, 2020 Ark. 58, at 5, 592 S.W.3d 695, 699. Additionally, in construing any statute, we place it beside other statutes relevant to the subject matter in question and ascribe meaning and effect to be derived from the whole. *Lawhon Farm Servs. v. Brown*, 335 Ark. 272, 279, 984 S.W.2d 1, 4 (1998). Statutes relating to the same subject must be construed together and in harmony, if possible. *Corbitt v. Ark. State Univ.*, 2024 Ark. 44, at 4, 685 S.W.3d 901, 903.

Pursuant to section 20-47-213(a) (Repl. 2018), a person may be detained for "initial evaluation and treatment" if a Section Five hearing is held within the specified time. Ark. Code Ann. §§ 20-47-213(a)(3), -209(a)(1). Section 20-47-210 also authorizes a person to be detained "for purposes of initial evaluation and treatment," provided:

(1) The person is immediately advised of his or her rights as provided in § 20-47-211;

5

(2) The person is determined by the treatment staff of the hospital or receiving facility or program or by the physician to be of danger to himself or herself or others as defined in § 20-47-207; and

(3) A hearing pursuant to § 20-47-209(a)(1) [Section Five hearing] is held within the specified time period.

Ark. Code Ann. § 20-47-210(c).

All these provisions contemplate an initial evaluation and treatment being conducted before a Section Five Hearing occurs. There is no dispute in this case that the Section Five hearing was timely in that it was held within seventy-two hours of detention. When the relevant provisions are read together, it is clear that the medication prohibition in the "initial period of evaluation and treatment" in section 20-47-218(b)(2)(A) is the seventy-two-hour period between detention and the Section Five hearing—not any period after the Section Five hearing. Because Invega was not given to Le until after the Section Five hearing, there was no violation of section 20-47-218(b)(2)(A).

Le also contends that the circuit court's Section Nine Order violates section 20-47-218(d)(3), which requires the "approved treatment plan [to be] incorporated by reference as part of the court's order of involuntary admission." Le admits that the treatment plan was introduced into evidence but contends that the court's failure to incorporate the plan as part of its order requires us to reverse and dismiss the order. While we recognize that the statute says that the court "shall" incorporate the plan as part of its order and that the court did not do so here, the statute states no express remedy for such a failure, and Le has cited no case providing one. "When the legislature has not seen fit to fashion a remedy, it is not the

6

province of the court of appeals to do so." *McKinney v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 475, at 16, 527 S.W.3d 778, 788–89 (holding there is no remedy for a court's failure to hold a statutorily required permanency-planning hearing in a termination case); *see also Turner v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 52, 539 S.W.3d 635 (holding no remedy provided by the legislature for failure to abide by the statutory time limits in Arkansas Code Annotated section 9-27-327). Therefore, Le is not entitled to relief on the basis of the circuit court's failure to incorporate the approved treatment plan in violation of section 20-47-218(d)(3).

Le also contends that the circuit court improperly admitted the State's exhibits 1 and 2 because they do not comport with the definition of a treatment plan. The decision to admit or exclude evidence is within the sound discretion of the circuit court, and we will not reverse that decision absent a manifest abuse of discretion. *Ark. Dep't of Hum. Servs. v. Huff*, 347 Ark. 553, 558, 65 S.W.3d 880, 884 (2002). "Treatment plan" is defined as

> an individualized written document developed by the treatment staff of the hospital or receiving facility or program which includes the following:
>
> (A) A substantiated diagnosis in the terminology of the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders [(DSM)];
>
> (B) Short-term and long-term treatment goals;
>
> (C) Treatment programs, facilities, and activities to be utilized to achieve the treatment goals; and
>
> (D) Methods for periodic review and revision of the treatment plan.

7

Ark. Code Ann. § 20-47-202(21) (Supp. 2023). Le's argument is that exhibit 1, the Master Treatment Plan, does not contain a proper DSM diagnosis, which the State admits. Exhibit 2, the Progress Notes, do refer to Dr. Yalamanchili's "assessment" of schizoaffective disorder, bipolar type, which is a substantiated diagnosis under the DSM. Le contends that only the Master Treatment Plan qualifies as a "treatment plan"; that it was signed by the social worker and not Dr. Yalamanchili; and, in any case, that the Progress Notes do not mention a "diagnosis" but merely an "assessment."

First, the definition of treatment plan does not limit the plan to one unamended document. Indeed, the definition specifically contemplates that it will be periodically reviewed and revised. Dr. Yalamanchili testified that the treatment plan progresses or evolves with treatment of the patient and that the Master Treatment Plan and the Progress Notes "go together." He said that the Progress Notes demonstrate the "flow and progression" of treatment. Further, there is no requirement that the document be signed by Dr. Yalamanchili, only that it be "developed by the treatment staff," which Dr. Yalamanchili testified it was. Finally, the Progress Notes clearly reference a substantiated diagnosis under the DSM, and Dr. Yalamanchili testified at length that Le had been diagnosed with schizoaffective disorder, bipolar type, in June and again in the most recent evaluation. The court did not abuse its discretion in admitting exhibits 1 and 2 that, collectively, were a "treatment plan" as defined by section 20-47-202(21).

For his final point on appeal, Le argues that the circuit court lacked jurisdiction to enter the Section Nine Order because it failed to ensure that Le was afforded all his rights

under the statutes as required by section 20-47-205(b)(3). He contends that his rights were violated as previously argued. However, the only statutory violation Le has presented on appeal is the court's failure to incorporate by reference the treatment plan in its order in violation of section 20-47-218(d)(3). As we stated, the legislature provided no express remedy for such a failure, and there is nothing in Arkansas Code Annotated section 20-47-205(a)—which gives the circuit court exclusive jurisdiction of involuntary-admission procedures—providing that the court's failure to incorporate the treatment plan it its order deprives the court of jurisdiction.

Le cites *Chatman v. State* and *Campbell v. State* as authority for reversal and dismissal. We find those cases to be inapposite. In both cases, the supreme court reversed and dismissed for lack of jurisdiction over a Section Nine hearing. In neither case was the appellant provided a Section Five hearing. In *Campbell*, the court held that the failure to file a timely petition for involuntary commitment—that is, within seventy-two hours of detention under section 20-47-210—rendered the court devoid of jurisdiction to conduct the Section Nine hearing. 311 Ark. 641, 645, 846 S.W.2d 639, 641 (1993). In *Chatman*, the court held that a circuit court's failure to conduct a Section Five hearing was a "fatal defect" in the process and divested the circuit court of jurisdiction to proceed further in the case. 336 Ark. 323, 325, 985 S.W.2d 718, 720 (1999). These violations involved the patient's right to be heard. In *Campbell*, the patient was involuntarily committed for ten days before a hearing was held, and in *Chatman*, the patient was detained for seven days before a hearing was held. And the only hearing in both cases was a Section Nine hearing. Neither Campbell nor Chatman was

9

provided a Section Five hearing. In this case, Le was provided proper notice and timely Section Five and Section Nine hearings. We hold that the circuit court had jurisdiction over the Section Nine hearing.

Affirmed.

KLAPPENBACH, C.J., and BARRETT, J., agree.

*Maegan C. Hodge*, Office of the Public Defender, for appellant.

*Tim Griffin*, Att'y Gen., by: *Christian Harris*, Sr. Ass't Att'y Gen., for appellee.