Anne Kay VON LUCE *v.* Robert M. RANKIN, Commissioner of Mental Health Services, Arkansas State Hospital

79-228                                    588 S.W. 2d 445

Opinion delivered October 29, 1979
(In Banc)

*Griffin J. Stockley* and *James R. Cromwell* of *Central Arkansas Legal Services, Inc.,* for appellant.

*Steve Clark*, Atty. Gen., by: *Paul N. Means*, Asst. Atty. Gen., for appellee.

JOHN I. PURTLE, Justice. This is an appeal from the denial of a Petition for Writ of Habeas Corpus in the Pulaski County Chancery Court. Appellant was admitted to the state hospital as a voluntary patient by her guardian and subsequently sought release through a petition for habeas corpus. The chancery court refused to grant the petition because the guardian was not a party to the proceeding.

The question to be determined is whether a guardian may voluntarily confine her ward as a patient in the state hospital against the wishes of the ward and without the ward's consent or a probate court hearing. We do not believe a voluntary admission may be converted to an involuntary commitment without due process of law. Therefore, the writ should have been granted.

On May 10, 1979, Ute Patterson, the daughter of Anne Kay Von Luce, petitioned the Washington Probate Court for appointment of herself as guardian of her mother. On the same date an order appointing the daughter as temporary guardian was issued by the court. The order simply stated that petitioner was an "incompetent." There was an unverified letter from a doctor to the effect that in his opinion Mrs. Von Luce was an "incompetent." The court issued a summons on the same day but it was not served on Mrs. Von Luce until 5 days later. The summons contained the usual 20-day return provisions. However, 4 days after the order appointing the guardian she voluntarily admitted her mother into the state hospital in Little Rock. On June 6, 1979, the ward filed a petition in the Pulaski County Chancery Court seeking a writ of habeas corpus. A hearing was held on the petition the following day and the court, although finding the ward illegally detained, refused to grant the petition because the guardian was not a party to the action. At this hearing the only authorization for holding the incompetent as a patient was an application for voluntary commitment which had been executed by the guardian on behalf of the ward. On the face of this application were the following words:

> NOTE: Arkansas statutes provide that a person may not be held on a voluntary statement against his/her will unless considered homicidal, suicidal, or gravely disabled as defined by law.

There was no order of commitment or any evidence or testimony indicating the petitioner had received notification or been granted a hearing. The order from the Washington Probate Court appointing the guardian was introduced into evidence along with the unverified statement of the doctor which had been presented to the Washington Probate Court. The state hospital did not offer any testimony or other evidence indicating a need for confinement.

On June 20, 1979, this Court granted petitioner's release from the state hospital on application for temporary relief. The ward was released to her guardian and subsequently returned to her home in Washington County. So far as we know, the temporary order of guardianship has expired.

Ordinarily, we would consider this question moot; however, due to the likelihood of such incidents being repeated and the unlikelihood that a decision can be reached on appeal before a temporary guardianship is terminated, we treat the question as one to be considered on the merits as they existed at the time the petition for habeas corpus was heard.

Even if a guardian may voluntarily admit a ward without a hearing or order, when the ward expresses a desire to leave the hospital it is a different situation. If the guardian were permitted to refuse the ward's wishes, then the voluntary admission would become an involuntary one as it relates to the ward. To allow such confinement would contravene the statutory and constitutional safeguards afforded to the mentally ill. The writ of habeas corpus is the primary means by which a detainee may test the legal authority of his custodian. Appellee frankly admits the Pulaski County Chancery Court is the proper forum for such proceedings. Also, it is tacitly admitted the probate order appointing the guardian was of doubtful validity. Since the order has expired, we will not examine that proceeding.

The fact that the custodian held authority to release petitioner was of little comfort in view of the fact that she was held until this Court ordered her release on June 20, 1979. 1979 Ark. Acts No. 817 provide that nothing in the act shall in any way restrict the rights of any person to attempt to secure their release by habeas corpus as provided by the current Arkansas law. The habeas corpus petition has been used to obtain the release of a confinee in the state hospital. *Rowland* v. *Rogers,* 199 Ark. 1041, 137 S.W. 2d 246 (1940). Ark. Stat. Ann. § 34-1733 (Repl. 1962) states:

If it appear that the prisoner is in custody by virtue of process from any court legally constituted, or issued by any officer in the exercise of judicial proceedings before him, such prisoner can only be discharged in one (1) of the following cases:

First. Where the jurisdiction of such court or officer has been exceeded, either as to matter, place, sum or person.

Second. Where, though the original imprisonment was lawful, yet, by some act, omission or event which has taken place afterward, the party has become entitled to his discharge.

Third. Where the process is defective in some matter or substance required by law, rendering such process void.

\* \* \*

The state hospital held no order of any kind which authorized it to detain the petitioner. The only authorization at all was the application completed by the guardian. By no stretch of the imagination can it be said that this application was authority to hold the petitioner against her will. The Arkansas General Assembly treated this subject extensively in Act 817 of 1979. None of the provisions of this Act were followed. Section 3 (A)(B) of Act 817 states:

\* \* \*

(A) Any person who believes himself to be suffering from a mental illness, disease or disorder may make application in writing himself or by his guardian . . .

(B) If at any time the patient who has voluntarily admitted himself or herself to the hospital makes a request to leave, and the Commissioner or his designee or the official in charge of the hospital or his designee determines that the patient is at that time homicidal, suicidal or gravely disabled, then the patient shall be considered to be held involuntarily and the commitment procedures set forth herein shall apply.

\* \* \*

In an involuntary case a hearing must be held within 7 days. The only hearing was on the petitioner's request for habeas corpus.

Mental illness alone is not justification for a guardian or

a state to lock a person up. There must be a meaningful hearing in accordance with due process before such action is authorized. *Wessel* v. *Pryor,* 461 F. Supp. 1144 (Ed. Ark. 1978); *O'Connor* v. *Donaldson,* 422 U.S. 563 (1975). It was stated on the face of the application for voluntary admission that a patient could not be held against his wishes unless the patient was considered homicidal, suicidal, or gravely disabled. In this case there has simply been no attempt on the part of anyone to comply with the provisions of any Arkansas law as it relates to involuntary commitment. Not even a mentally ill person may be confined against his will unless he is afforded due process of law. Act 817 provides that before a person may be committed for 30 days or more there must be a hearing at which clear and convincing evidence is presented to the effect that the ward or detainee is homicidal, suicidal, or gravely disabled. We are not unaware of the problem of society and the mentally ill. The welfare of the people and the mental patient must both be given careful attention. The best interest of both must be weighed and taken into consideration when the question of confinement is at issue. If we were not to require at least substantial compliance with the law to fully protect the rights of incompetents it would be possible for an unscrupulous person to have himself appointed as guardian and then lock his ward in a mental institution and proceed to waste the ward's estate. If a state and the judiciary are not vigilant in the protection of the rights of incompetents it is likely to lead to the abuse of the person and estate of such incompetents. The mentally ill are unable to think and care for themselves in a normal manner and of necessity depend upon the state and the courts for protection. Although due process safeguards do not extend to the voluntary committee they most definitely extend to involuntary detainees. When a voluntary patient seeks relief he must be released or henceforth treated as an involuntary detainee in which case the due process safeguards most definitely apply. We have no choice on the record before us other than to treat petitioner as an involuntary detainee and must hold in this case that the ward was not afforded either procedural or substantive due process. Therefore, the court should have granted the petition for habeas corpus.

Reversed and remanded.

Harris, C.J. not participating.

Hickman, J. concurs.

Darrell Hickman, Justice, concurring. The majority seem to be saying Section 3(A) (B) of Act 817 of 1979 could be interpreted to mean that a ward can be committed to the Arkansas State Hospital without a hearing.

Quite often a ward has a guardian because of minority. A guardian can be appointed for someone with a physical disability. In such a case it would not seem proper for a guardian to have someone "voluntarily" committed to the Arkansas State Hospital without any notice, without a hearing and without an opportunity to protest.

Ark. Stat. Ann. § 57-625(b) reads:

b. CARE, TREATMENT AND CONFINEMENT. If the ward be incompetent and for reasons other than minority and shall not have been committed to the State Hospital as otherwise provided by law, the court may, upon petition of the guardian of the person or other interested person, after such notice as the court shall direct, including notice to the guardian of the person if he is not the petitioner, authorize or direct the guardian of the person to take appropriate action for the commitment of the ward to the State Hospital or, while retaining control over and responsibility for the care of the person of the ward, to place the ward in some other suitable institution for treatment, care or safekeeping. Upon petition of the guardian or other interested person, after a hearing of which the guardian of the person and such other persons as the court may direct shall have notice, the court may, for good cause shown, modify, amend or revoke such order. If the condition of the ward be such as to endanger the person or property of himself or others, the guardian may, in an emergency, temporarily confine the ward in some suitable place or deliver him into the custody of the sheriff for safekeeping in the county jail until such time as the court may hear and act upon a petition, which shall be promptly

filed by the guardian, with reference to the commitment of the ward to the State Hospital or for other appropriate provision for his treatment, care and safekeeping.

Act 817 does not expressly repeal Ark. Stat. Ann. § 57-625 and I believe that when the two acts are read together, weight must be given to Ark. Stat. Ann. § 57-625 as controlling in a situation where there is a commitment to the Arkansas State Hospital.

If the majority's position is that a "voluntary" commitment is with the consent of the ward, this ignores the fact that a ward has a guardian because the ward is incompetent, and his power to consent has been removed.

It is my judgment any commitment without a hearing violates due process of law.

I agree with the result reached by the majority, but I respectfully concur with the majority's opinion.