Richard DICKINSON, III *v.* STATE of Arkansas

07-355 270 S.W.3d 863

Supreme Court of Arkansas
Opinion delivered January 10, 2008

---

*Gary W. Potts*, for appellant.

No response.

DONALD L. CORBIN, Justice. The instant case is a no-merit appeal from a temporary civil-commitment order filed by counsel for Appellant Richard Dickinson, III, pursuant to *Anders v. California*, 386 U.S. 738 (1967). The appeal was certified to this court by the Arkansas Court of Appeals for a determination of whether the *Anders* procedure is applicable in the context of a civil-commitment order; hence, our jurisdiction is pursuant to Ark. Sup. Ct. R.

1-2(b)(1) and (5). Because we hold that the order committing Dickinson for seven days is moot, we dismiss the instant appeal.

On January 8, 2007, Gloria Dickinson, Dickinson's mother, filed a petition in circuit court, alleging that her son was addicted to drugs and needed to be committed to a treatment facility. According to the petition, Dickinson believed people were trying to kill him, had a gun in his possession, and had checked himself into jail. The petition further stated that Dickinson admitted to his mother that he used crystal methamphetamine. Following a preliminary hearing, an order for immediate detention for seventy-two hours was issued, pursuant to Ark. Code Ann. § 20-47-210 (Repl. 2001).[1]

In accordance with the procedures set forth in Ark. Code Ann. § 20-47-209 (Repl. 2001), a seven-day commitment hearing was held on January 11, 2007. Gloria testified at the hearing that her son was paranoid and felt that there were people trying to kill him. He also believed that there were people in his attic who were putting poison in his vent. As a result, Dickinson covered his vent with duct tape. At one point, he also believed that people put a bomb in his room, so he tore apart his room's sheetrock. Gloria also testified that she came home to find Dickinson on the roof with a gun and that after he came down from the roof, he went into the backyard to find the "killers." Finally, Gloria stated that her son was hospitalized for mental problems in 1985 and was subsequently diagnosed with a drug-induced psychosis.

Dana Williams, a therapist with Delta Counseling, testified that she evaluated Dickinson during his temporary detention to determine whether he had a mental illness. According to Williams, Dickinson exhibited signs of paranoia, showing her a list of people who were after him, referring to the Da Vinci Code and the end of the world, and stating that he was selling marijuana to the sheriff for money to help his family. After determining there was psychosis present, Williams diagnosed Dickinson as suffering from a psychotic disorder, not otherwise specified. She also recommended that he be hospitalized for a period of seven days so that he could be evaluated to determine whether he needed treatment. A copy of Williams's report was introduced into evidence at the hearing.

---

[1] No appeal was taken from this order.

Dickinson also testified at the hearing, stating that he did believe people were out to get him and that he heard people in his attic. He also stated that he believed himself to be Jesus Christ and offered into evidence, over the objection of his counsel, several pages of handwritten documents he claimed proved him to be Jesus.

At the conclusion of the hearing, the circuit court ruled from the bench that Dickinson was very paranoid and further evaluation was necessary. The circuit court subsequently entered a written order, pursuant to Ark. Code Ann. § 20-47-207 (Supp. 2005), finding that there was probable cause to believe that Dickinson suffered from a mental illness, disease, or disorder that caused him to pose a clear and present danger to himself or others. The order further provided that Dickinson was to be involuntarily admitted to the Arkansas State Hospital or other appropriate facility for a period of seven days so that an evaluation could be performed to determine whether treatment for a mental illness was appropriate.

Counsel for Dickinson filed a notice of appeal from the January 11 commitment order on January 29, 2007.[2] He then simultaneously filed a motion seeking to be relieved as counsel for Dickinson and a no-merit brief, utilizing the *Anders* procedures promulgated by this court in Ark. Sup. Ct. R. 4-3(j) for the withdrawal of counsel "for a defendant in a criminal or a juvenile delinquency case." Dickinson was given thirty days to file a pro se response to the no-merit brief but failed to do so. The State then submitted a letter to this court's clerk indicating that it would not file a responsive brief, because there was no pleading to which it could respond. The State also called into question counsel's authority to apply the *Anders* procedures to an appeal from a civil-commitment order.

As previously stated, we accepted certification of this case in order to determine whether the *Anders* procedures are applicable in this case. As a threshold matter, however, we must first determine whether the appeal that is before us is moot. As a general rule, the

---

[2] Prior to counsel's filing of the notice of appeal, the circuit court held a hearing on January 17, 2007, pursuant to Ark. Code Ann. § 20-47-214 (Repl. 2001), to determine whether Dickinson needed to be held for an additional period of forty-five days for purposes of treatment. A written order involuntarily admitting Dickinson to an appropriate treatment facility was filed of record on February 5, 2007. No notice of appeal was ever filed from the February 5 order.

appellate courts of this state will not review issues that are moot. *Kinchen v. Wilkins*, 367 Ark. 71, 238 S.W.3d 94 (2006). To do so would be to render advisory opinions and this we will not do. *Id.* A case becomes moot when any judgment rendered would have no practical legal effect upon a then-existing legal controversy. *Shipp v. Franklin*, 370 Ark. 262, 258 S.W.3d 744 (2007). In other words, a moot case presents no justiciable issue for determination by the court. *Id.*; *Martin Farm Enters., Inc. v. Hayes*, 320 Ark. 205, 895 S.W.2d 535 (1995). Furthermore, this court has held that courts do not sit for the purpose of determining speculative and abstract questions of law or laying down rules for future conduct. *Tsann Kuen Enters. Co. v. Campbell*, 355 Ark. 110, 129 S.W.3d 822 (2003).

This court has recognized two exceptions to the mootness doctrine, one of which involves issues that are capable of repetition, yet evade review. *See, e.g., Cotten v. Fooks*, 346 Ark. 130, 55 S.W.3d 290 (2001). The other mootness exception concerns issues that raise considerations of substantial public interest which, if addressed, would prevent future litigation. *Id.* We hold that the instant appeal does not fall within either of the exceptions to the mootness doctrine.

First, the issue presented here is whether the circuit court erred in entering the seven-day involuntary commitment order.[3] This is not an issue that is capable of repetition yet evading review. Here, we have a notice of appeal from a seven-day commitment order filed after the court held a forty-five day hearing and committed Dickinson for treatment. There was no appeal of the subsequent forty-five day commitment order, and the forty-five days in which Dickinson was to be treated have passed. Moreover, the temporary order committing Dickinson for seventy-two hours was also never appealed. Based on the record before us, no further action was taken by the circuit court after the

---

[3] Even though this court accepted certification of this case on the issue of whether the *Anders* procedures should be extended to appeals from civil-commitment orders, we are precluded from addressing that specific issue on appeal. It is a well-settled principle of appellate law that this court will not consider an argument unless it has been properly developed. *Hanlin v. State*, 356 Ark. 516, 157 S.W.3d 181 (2004). Likewise, we do not make a party's argument for him or her. *Id.* In the instant case, no party raises the issue of whether the *Anders* procedure is applicable to this appeal. Moreover, we do not have the benefit of a brief from the State addressing such an issue.

passage of those forty-five days. Under these facts, we cannot say that this case is capable of repetition yet evading review.

 Second, while the issue of whether *Anders* procedures should be utilized in appeals from commitment orders may at some point raise considerations of substantial public interest, the posture of the present appeal does not lend itself to such a conclusion. Even if we assume that counsel filed the no-merit brief from the seven-day order because his client instructed him to appeal that order, Dickinson never filed any response to the no-merit brief, even though he was given thirty days in which to file a pro se brief. Because no pro se brief was ever filed, the State had no pleading to which it could respond. Thus, the procedural posture of this case is that counsel for Dickinson has assumed that *Anders* applies and seeks to be relieved on the basis that his client has no meritorious basis for an appeal.[4] As a result, the issue of whether the *Anders* procedures should be extended to situations involving appeals from civil-commitment orders has not been properly addressed to this court by any party. Thus, the case as it is now before us does not present an issue of substantial public interest.

Accordingly, we dismiss the instant appeal as moot. The motion to be relieved as counsel is also moot.

Appeal dismissed.

BROWN and IMBER, JJ., dissent.

ANNABELLE CLINTON IMBER, Justice, dissenting. I respect-fully, but strongly, disagree with the majority opinion. In dismissing the instant appeal as moot, the majority refuses to address an important issue: whether the right to counsel of persons sought to be involuntarily committed should be protected by the *Anders* pro-cedures. Under our prior case law, the instant appeal fits squarely into both recognized exceptions to the mootness doctrine; thus, this case should be decided on its merits.

We have stated that the choice of mootness is ours to make. *Owens v. Taylor*, 299 Ark. 373, 772 S.W.2d 596 (1989). Where considerations of public interest or prevention of future litigation

---

[4] Additionally troubling is the fact that there is no order in the record before us finding Dickinson indigent or appointing counsel to represent him. The only indication that counsel was in fact appointed and not retained is counsel's statement in his motion to be relieved as counsel that he was appointed to represent Dickinson at the seven-day commitment hearing.

are present, we may elect to settle an issue, even though moot. *Id.* We have been faced many times with the question of whether to review a case in spite of the fact that the appellant can be afforded no relief based on our decision. In those situations, we have faithfully applied the two exceptions to the mootness doctrine, at least until the majority's opinion today.

For example, we have reviewed expired temporary guardianships on the basis that such orders are capable of repetition yet evade review. *See Von Luce v. Rankin*, 267 Ark. 34, 588 S.W.2d 445 (1979). We cited as our rationale the likelihood of such incidents being repeated and the unlikelihood that a decision can be reached on appeal before a temporary guardianship is terminated. *Id.* We have furthermore chosen to review a case in which an elected official challenged his removal from office due to his felony convictions, despite the fact that not only had his criminal appeal run its course, but he had also been defeated in a subsequent election. *See Campbell v. State*, 300 Ark. 570, 781 S.W.2d 14 (1989). We held that the appeal fell under both mootness exceptions and stated that "when the case involves the public interest, or tends to become moot before litigation can run its course, or a decision might avert future litigation, we have, with some regularity, refused to permit mootness to become the determinant." *Id.* at 572, 781 S.W.2d at 15.

Even more troubling than the majority's refusal to apply our general mootness exceptions to the present case is the fact that we have applied mootness exceptions several times to appeals from temporary civil-commitment orders like the one at issue here. The majority chooses to ignore those decisions. Our justification was set forth in an appeal from an expired forty-five-day commitment order:

> This case "is moot in the sense that we cannot now afford appellant any relief, but it is not moot in the sense that it is important to decide a practical question of great public interest." As appellant points out, the involuntary commitment statutes provide for only short term involuntary commitment such that most persons committed under these statutes will have been released before their appeals can be decided. Whether a person can be held involuntarily when the petition for involuntary commitment is not filed within the time provided in the statute is a practical question of great public interest. For that reason, we address appellant's substantive argument.

*Campbell v. State*, 311 Ark. 641, 643-44, 846 S.W.2d 639, 640-41 (1993) (internal citations omitted) (quoting *Campbell v. State*, 300 Ark. 570, 572, 781 S.W.2d 14, 15 (1989)). This rationale was cited in another appeal from an expired forty-five-day commitment order, where we further noted, "Persons committed under a forty-five-day civil commitment order would never be able to appeal those orders because they will likely have been released from the order before their appeals can reach this court." *Chatman v. State*, 336 Ark. 323, 326, 985 S.W.2d 718, 720 (1999). We also applied the exceptions in *Buchte v. State*, 337 Ark. 591, 990 S.W.2d 539 (1999), another appeal from an expired forty-five-day commitment order. I know of only one case in which this court has declined to apply the mootness exceptions to a temporary civil-commitment order, but we did so because the issues were not preserved for appellate review. *Smedley v. Smedley*, 319 Ark. 421, 892 S.W.2d 273 (1995).

The majority offers no persuasive reasoning for declining to regard this case law as controlling or for refusing to apply the well-settled exceptions to the instant appeal. With regard to the exception for issues that are capable of repetition but evade review, the majority seems to say that the exception is inapplicable because Dickinson failed to appeal both the seventy-two-hour commitment order and the forty-five-day commitment order. In response, I point to the cases cited above that have permitted appeals of forty-five-day commitment orders and note that the rationale applies even more fittingly to appeals of seven-day commitment orders. If an appellant cannot pursue an appeal of a forty-five-day commitment order because he or she will be released from the order by the time an appeal is heard, then he or she surely cannot appeal a seven-day commitment order. Thus, the issue will always evade review. Moreover, the issue presented here — whether an attorney who believes an appeal from a civil-commitment order would be without merit should be able to rely on the *Anders* procedures — is capable of repetition in future cases. The requirement that the issue be capable of repetition does not insist on the potential for repetition in the *same* case; rather, it insists on the potential for repetition in similar *future* cases. *See Von Luce v. Rankin, supra.*

The majority declines to apply the exception to issues that are of substantial public interest, noting that Dickinson failed to file a *pro se* brief and that the State had no pleading to which it

could respond. I fail to see how the procedural posture of this appeal makes the issue presented any less important. The distinction articulated by the majority merely seems to be a means to avoid a decision on the question of whether the *Anders* procedures should apply to civil-commitment proceedings. The United States Supreme Court decided to require no-merit briefs in an attempt to "assure penniless defendants the same rights and opportunities on appeal — as nearly as is practicable — as are enjoyed by those persons who are in a similar situation but who are able to afford the retention of private counsel." *Anders v. California*, 386 U.S. 738, 745 (1967). This goal, in the context of involuntary commitments, is surely one of substantial public interest.

As for the majority's contention that the issue of the applicability of the *Anders* procedures has not been properly developed, I point out that this court did not hesitate to address the issue in the context of a similar situation, in *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004). In *Linker-Flores*, we were faced with the question of whether the *Anders* procedures should be applied to counsel for indigent parents in termination-of-parental-rights appeals. *Id.* However, we did not come to address the issue as a result of it being raised by the parties. Instead, counsel for the appellant submitted an unaccompanied motion to be relieved as counsel on the basis that she could find no meritorious grounds for appeal. *See Linker-Flores v. Ark. Dep't of Human Servs.*, 356 Ark. 369, 149 S.W.3d 884 (2004) (per curiam). This court denied the motion because the appellant was entitled to representation on appeal and, on our own motion, ordered the parties to brief the issue of whether counsel representing a parent in a termination proceeding should be required to file a no-merit brief comparable to that required under *Anders* where there appears to be no meritorious ground for reversal. *Id.* In the instant case, counsel for the appellant has submitted a motion to be relieved as counsel, in addition to a no-merit brief. Whether we choose to proceed on our own or require the parties to brief the issue of *Anders* applicability, we should decide this case on its merits. The fact that the parties have not yet argued the issue to this court is not dispositive.

Finally, I underline the point that the United States Supreme Court has characterized involuntary commitment as a "massive curtailment of liberty," *Humphrey v. Cady*, 405 U.S. 504, 509

(1972), for which due process protection is required. *See Addington v. Texas*, 441 U.S. 418 (1979). To hold that the instant appeal and other procedurally similar cases are moot would obliterate the right to appeal, and to suggest that the statutory procedure providing for a subsequent, forty-five-day commitment somehow inoculates restrained persons from any harm imposed by the seven-day commitment would be to deny due process protection. A restraint on liberty is no less offensive or harmful simply because it lasts only for seven days.

The seven-day commitment order is appealable by statute. Ark. Code Ann. § 20-47-217 (Repl. 2001). Yet, an appeal cannot possibly be resolved within seven days' time. Thus, the majority's opinion completely eliminates the statutorily guaranteed right to an appeal. Because the issues presented in an appeal from a seven-day commitment order are capable of repetition but evade review, we should hear such appeals pursuant to our well-settled exception to the mootness doctrine. Furthermore, the instant appeal presents an issue of substantial public interest — whether the right to counsel of persons sought to be involuntarily committed should be protected by the *Anders* procedures. For the above-stated reasons, I firmly believe that the majority has erred in dismissing this appeal as moot when the case should be decided on its merits. I respectfully dissent.

BROWN, J., joins this dissent.