MANSFIELD, Justice
(concurring in part and dissenting in part).
I agree that if we reach the merits, the district court’s order should be affirmed. However, I would dismiss the appeal as moot.
The majority seemingly holds that an appeal from a civil commitment order, where the appellant has been released, should only be dismissed as moot if there have been “a series of recent, successive involuntary commitments that were either not appealed or upheld on appeal.” I think this standard opens the door to too many future appeals of commitment orders where nothing tangible is at stake. I am not in favor of using our judiciary’s limited resources in this fashion.
This particular case highlights the potential concerns. Here B.B., a Nebraskan with a history of mental illness who admitted he was “distraught,” crossed into Iowa on December 14, 2011, and tried to enter the restricted area of an Iowa Air National Guard base. He was brought to a hospital emergency room “in a very agitated and confused state.” He was “making wild threats to harm himself and others and ... requiring 3 police officers to keep him subdued.” Based on an emergency order, B.B. was hospitalized. He refused to take his medication. He denied he had any mental illness or needed any medication. He claimed the hospital staff were going to take his brain or his organs from his body.
In addition to getting medical treatment in a Sioux City hospital, B.B. received a full hearing on December 20. After the hearing, the district court concluded that B.B. should remain hospitalized for the reasons set forth in Iowa Code section 229.1(17)(a) and (6). Seven days later, B.B.’s condition apparently stabilized. He was released for outpatient treatment and went home to Nebraska.
Now B.B. seeks to bring an appeal challenging the sufficiency of the evidence to sustain his expired commitment order. The taxpayers of Iowa will pay for all aspects of this appeal, including the expense of B.B.’s attorney, just as they bore the expense of all lower court proceedings.[7]
No one suggests that we are constitutionally required to hear this case. This is purely our call. As the majority notes, there is a grab bag of standards from other jurisdictions, under some of which this appeal would be moot. See also In re Involuntary Commitment of Skelton, 777 *435 So.2d 148, 149 (Ala.Civ.App.2000) (dismissing appeal from commitment order as moot where the appellant had been released); Dickinson v. State, 372 Ark. 62, 270 S.W.3d 863, 866-67 (2008) (dismissing appeal from commitment order where the appellant had been released and no public exception applied); In re Doe, No. 23869, 2003 WL 1264129 at *1-2 (Haw. Mar. 17, 2003) (same); In re Interdiction of C.S.B., 880 So.2d 997, 999 (La.Ct.App.2004) (dismissing appeal as moot).
Furthermore, under our own precedent, this appeal is moot. In In re M.T., we indicated that an appeal from a civil commitment order ordinarily becomes moot when the party has been released, stating, “We think the present appeal is moot. M.T. is no longer subject to the inpatient treatment order that resulted from the challenged hearing.” 625 N.W.2d 702, 705 (Iowa 2001). True, what we said there was arguably dictum, because we later went on to hear the case under a separate exception to the ordinary rules of mootness. Id. But our court unanimously signed on to the foregoing general statement on mootness, and it has been repeatedly followed by the court of appeals in dismissing appeals from commitment orders on mootness grounds.[8]
If we are going to overrule what we said in In re M.T., then I would propose a different standard from the majority’s. Thus, I would hold that a commitment appeal should automatically go forward if the appellant has not previously been adjudicated mentally ill (or the statutory equivalent) in any jurisdiction. If, however, the State can demonstrate that the appellant has previously been adjudicated mentally ill, e.g., in papers filed with a motion to dismiss the appeal, then the presumption would arise that the appeal is moot if the appellant has been released. The burden then would shift to the appellant to show that he or she will suffer some specific collateral consequence from the judgment that he or she seeks to appeal (other than the stigma or potential future evidentiary value of one more finding that the appellant is mentally ill). Alternatively, the appellant may show that the appeal falls into the broad public interest exception (and here I would hold that sufficiency of the evidence appeals do not meet that exception).[9] If the appellant fails to do either of these things, the appeal would be dismissed.
I believe this approach appropriately balances the interests of the appellant, the State, and the courts, and gives guidance for future cases. Under this approach, B.B.’s appeal would be dismissed. He has a prior involuntary commitment, even though it is from a number of years ago, and he has not shown that he will be subject to any specific collateral conse *436 quence because of his latest commitment order.
I recognize the potential exists for collateral consequences from any involuntary commitment order. I also acknowledge there can be stigma, although it bears emphasis that the proceedings are confidential. See Iowa Code § 229.24 (2011).[10] However, when a person already has a prior commitment order on his or her record, I think it is not unreasonable to insist that he or she demonstrate some concrete harm arising from the expired order he or she is trying to appeal. For the foregoing reasons, I respectfully dissent in part.
WATERMAN, J., joins this concurrence in part and dissent in part.

. I mean no criticism of B.B.'s court-appointed counsel, who has been zealously and capably representing his client, as he should. My question is simply whether we should be voluntarily expanding our own appellate jurisdiction as urged by the majority.

. See In re J.R.L., No. 08-0298, 2008 WL 4307997, 758 N.W.2d 841 (Iowa Ct.App. Sept. 17, 2008); In re J.P., No. 03-1419, 2004 WL 793223, 683 N.W.2d 128 (Iowa Ct.App. Apr. 14, 2004); In re O.T., No. 03-0365, 2003 WL 22700659, 674 N.W.2d 685 (Iowa Ct.App. Nov. 17, 2003); In re D.M.G., Sr., No. 02-0143, 2002 WL 31424828 (Iowa Ct.App. Oct. 30, 2002); In re D.K., No. 00-1596, 2001 WL 1502825 (Iowa Ct.App. Nov. 28, 2001). Obviously, these kinds of cases will now be added to the court of appeals' caseload, as will the many appeals that were not previously brought because attorneys assumed they were moot (not to mention the appeals that we dismissed as moot on motion prior to any transfer).

. See Rarey v. State, 616 N.W.2d 531, 532 (Iowa 2000) (finding the public interest exception did not apply where the issues "relate[d] peculiarly to [the appellant's] particular situation”); In re Alfred H.H., 233 Ill.2d 345, 331 Ill.Dec. 1, 910 N.E.2d 74, 81 (2009) (noting that sufficiency of the evidence claims "are inherently case-specific reviews”).

. The United States Supreme Court has recognized that "involuntary commitment to a mental hospital after a finding of probable dangerousness to self or odiers ... can have a very significant impact on the individual.” See Addington v. Texas, 441 U.S. 418, 425-26, 99 S.Ct. 1804. 1809. 60 L.Ed.2d 323. 331 (1979) (emphasis added). After first quoting this passage accurately, my colleagues then modify its meaning later in their opinion when they say that such a finding "has a ‘very significant impact on the individual.' ” (Emphasis added.)