SLIP OPINION

Cite as 2016 Ark. App. 326

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV–15–1015

| | |
|---|---|
| MARY SHANNON BATES<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | Opinion Delivered  June 8, 2016<br><br>APPEAL FROM THE CRAWFORD COUNTY CIRCUIT COURT<br>[NO. 17PR-15-225]<br><br>HONORABLE GARY COTTRELL, JUDGE<br><br>REVERSED AND DISMISSED |

**WAYMOND M. BROWN, Judge**

Appellant Mary Bates appeals the order of involuntary admission to "ASH or like Facility" for no more than forty-five days, entered by the Crawford County Circuit Court on August 19, 2015. Her sole argument is that there was insufficient evidence to support the court's finding that appellant posed a clear and present danger to herself or others. We agree and reverse and dismiss.

As an initial matter, the record before us does not indicate that a stay was obtained to suspend enforcement of the order entered by the trial court. Thus, the forty-five day treatment would have ended prior to us hearing this appeal. However, we decide this case

on its merits because this kind of proceeding will almost always become moot before litigation can run its course and a decision here might avert future litigation.[1]

The facts giving rise to this case are as follows: Appellant, who was a teacher at Central Middle School,[2] was accused of causing a disturbance on August 10, 2015. Appellant refused the principal's request to leave the building. At that point, Dr. Harold Jeffcoat, Superintendent of the Van Buren School District, along with assistant superintendent Dr. Brian Summerhill, were notified and came to the school to speak with appellant. When Jeffcoat attempted to talk with appellant, she would not allow him to talk and she would talk about things that seemed unrelated to why they were there. Appellant subsequently agreed to meet with them at Jeffcoat's office in the Administration Building. Frank Petray, the School Reserve Officer for Central High School, was contacted and asked to be present at the Administration Building when appellant arrived. Once appellant arrived, she was asked if she understood the reason for the meeting, to which she responded with answers that seemed unrelated to the questions. Appellant asked Jeffcoat and Summerhill how many children had to be hurt or how many children had to die. She stated that Summerhill knew what she was

---

[1] *See Campbell v. State*, 51 Ark. App. 147, 912 S.W.2d 446 (1995). We are mindful of our supreme court's holding in *Dickinson v. State*, 372 Ark. 62, 270 S.W.3d 863 (2008), in which the court dismissed the appeal as moot. However, this case can be distinguished from *Dickinson*, in that the appellant in *Dickinson* appealed from an initial seven-day order of commitment but failed to appeal the subsequent forty-five-day commitment. Here, Bates timely appealed the original admission order. Additionally, *Dickinson* did not overrule our prior case law addressing the issue involved in temporary civil-commitment orders despite being moot; it just declined to follow it.

[2] It is unclear if the disturbance occurred at Central Middle School or Central Elementary because both are referenced in the record.

SLIP OPINION

talking about. Just as before, appellant would not allow Jeffcoat to speak and when he tried, she would put her hand in his face and tell him to stop interrupting her. After about five minutes, appellant got mad, slammed her belongings down, and declared the meeting over. She also slammed the door as she left. Petray was advised to do whatever he needed to do about the situation with appellant. He followed her to the parking lot and performed field sobriety tests before she was allowed to leave. When asked if she was okay to drive home, she pointed toward her house and responded, "I just fucking live right there." She passed the sobriety tests and drove away. Jeffcoat asked Petray for a police report of the incident for documentation, which Petray provided.

On August 14, 2015, Petray was called back to the Administration Building because appellant had been sending group text messages telling individuals that they needed to do their jobs. Petray made contact with appellant at her home to inform her to stop sending the text messages and that she was no longer allowed on school property. During this meeting, appellant asked Petray, "How many children have to die?" or "How many more children have to be hurt?" Petray filed a petition for involuntary commitment on August 17, 2015. The court entered an order for detention, examination, and hearing the same day.

The hearing on the petition took place on August 19, 2015. At the hearing, Petray testified about the events that led to his contact with appellant on August 10 and 14. He testified that he did not hear appellant make any specific threats to harm herself or others. He stated that based on the contact he had with appellant, he did not believe appellant to be a significant risk to herself or others. Jeffcoat also testified about his interactions with appellant

on August 10. He stated that appellant's "tone was very angry," and that "there was some aggression on her part." He said that he believed that appellant was under some sort of influence. Jeffcoat stated that appellant "never threatened [him] or anyone in [his] presence with bodily harm." He also said that appellant was unarmed. He testified that he did not feel that he was in "mortal danger" during his interactions with appellant.

Appellant moved for the petition to be dismissed at the conclusion of the State's case. The State responded, "Out of an abundance of caution, we have heard the testimony several times that children are going to die. I believe it is incorrect to dismiss this." The court denied the motion.

Appellant testified that she had taught for twenty-six years. She denied making any threats in regard to children. She stated that she was in a professional development meeting on August 10 and that they were watching a video on bullying. She said that the majority of the teachers present were not paying attention to the video and were leaving the meeting, playing on their cellphones, and talking to each other. She testified that she did not believe that bullying was being addressed properly and that her statement about children getting hurt was in reference to bullying. She also discussed her frustration with the way things were being handled at her school, including the lack of time to prepare between classes and the many rules they had to follow.

At the conclusion of the hearing, appellant reiterated that the petition against her should be dismissed because the State failed to provide "any evidence that [appellant] is a threat to anyone. The evidence presented does not justify an involuntary commitment[.]"

The State responded that the petition "is in regard to the kids.  She made multiple statements regarding danger or death to kids and out of an abundance of caution, the court should consider this."  The court found that appellant suffered from mental disease and defect and that she was a danger to herself and others.  As a result, appellant was committed for a period of up to forty-five days.  An order of involuntary admission was entered on August 19, 2015.  Appellant filed a timely notice of appeal on September 11, 2015.  This appeal followed.

Arkansas Code Annotated section 20–47–207(c)[3] provides:

(1) A person shall be eligible for involuntary admission if he or she is in such a mental condition as a result of mental illness, disease, or disorder that he or she poses a clear and present danger to himself or herself or others.

(2) As used in this subsection, "a clear and present danger" to himself or herself is established by demonstrating that:

(A) The person has inflicted serious bodily injury on himself or herself or has attempted suicide or serious self-injury, and there is a reasonable probability that the conduct will be repeated if admission is not ordered;

(B) The person has threatened to inflict serious bodily injury on himself or herself, and there is a reasonable probability that the conduct will occur if admission is not ordered; or

(C) The person's recent behavior or behavior history demonstrates that he or she so lacks the capacity to care for his or her own welfare that there is a reasonable probability of death, serious bodily injury, or serious physical or mental debilitation if admission is not ordered; or

(D)(i) The person's understanding of the need for treatment is impaired to the point that he or she is unlikely to participate in treatment voluntarily;

(ii) The person needs mental health treatment on a continuing basis to prevent a relapse or harmful deterioration of his or her condition; and

---

[3](Repl. 2014).

(iii) The person's noncompliance with treatment has been a factor in the individual's placement in a psychiatric hospital, prison, or jail at least two (2) times within the last forty-eight (48) months or has been a factor in the individual's committing one (1) or more acts, attempts, or threats of serious violent behavior within the last forty-eight (48) months.

(3) As used in this subsection, "a clear and present danger to others" is established by demonstrating that the person has inflicted, attempted to inflict, or threatened to inflict serious bodily harm on another, and there is a reasonable probability that the conduct will occur if admission is not ordered.

A hearing must be held on a petition for involuntary confinement and at that time, the court must determine whether clear and convincing evidence has been presented that the person sought to be involuntarily admitted is a danger to herself or to others.[4] Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established.[5] The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous.[6] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made.[7]

Here, the State failed to meet its burden of proof. There was no evidence that appellant posed a danger to herself or others based on the testimony in the record. By all

---

[4]Ark. Code Ann. § 20-47-214(b)(2) (Repl. 2014).

[5]*Anderson v. Douglas*, 310 Ark. 633, 839 S.W.2d 196 (1992).

[6]*J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997).

[7]*Yarborough v. Ark. Dep't of Human Servs.*, 96 Ark. App. 247, 240 S.W.3d 626 (2006).

SLIP OPINION

accounts, no one feared that appellant was a present danger to herself or to anyone else. The State attempted to excuse its lack of proof by contending that the court should consider the petition out of an abundance of caution. However, the statute does not allow an abundance of caution to take the place of clear and convincing evidence when someone is being involuntarily committed. We are convinced that the trial court's finding that appellant posed a clear and present danger to herself or others is clearly erroneous. Therefore, the order of involuntary admission is reversed and dismissed and the record of appellant's involuntary commitment is to be removed from the treatment records at "ASH or like Facility."[8]

Reversed and dismissed.

HARRISON and WHITEAKER, JJ., agree.

*Lisa-Marie Norris*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Valerie Glover Fortner*, Ass't Att'y Gen., for appellee.

---

[8] *See Black v. State*, 52 Ark. App. 140, 915 S.W.2d 300 (1996).